445 F.Supp. 949 (1978)
In re Arthur Douglass FOSTER, Bankrupt.
Warren L. McCONNICO, Trustee in Bankruptcy, Plaintiff-Appellee,
v.
GENERAL MOTORS ACCEPTANCE CORPORATION, a corporation, Defendant-Appellant.
No. 77-C-438-B.
United States District Court, N. D. Oklahoma.
February 16, 1978.
*950 Warren L. McConnico in pro. per.
Timothy J. Sullivan, Prichard, Norman, Reed & Wohlgemuth, Tulsa, Okl., for defendant-appellant.

ORDER
BARROW, Chief Judge.
This matter is presently before this Court predicated on an appeal from the decision of the Bankruptcy Judge rendered on September 23, 1977. The appeal was properly taken pursuant to Rule 801 et seq. of the Rules of Bankruptcy Procedure.
The parties have stipulated as to the facts involved in this controversy, and the Court finds, pursuant to Rule 809 of the Rules of Bankruptcy Procedure that there is no need for oral argument, this being a question of law sufficiently briefed by the parties, and, the Court, therefore, Orders that no oral argument be had on this matter, but that the controversy be determined summarily.
The Facts stipulated to by the parties are as follows:
1. On or about the 12th day of July, 1974, the bankrupt, Arthur Douglass Foster, then a resident of the State of New York, and Joan E. Foster entered into a conditional sale contract with Palmyra Motors, Inc., a New York corporation, by which the bankrupt purchased a 1974 Chevrolet Fleetside Pickup, Serial Number CCQ1441182952. The sale was consummated in Palmyra, New York. Under the terms of said contract, Palmyra Motors, Inc. obtained a security interest in the above-described vehicle. Subsequent to the execution of the contract, Palmyra Motors, Inc. assigned its interest in the contract to General Motors Acceptance Corporation, the defendant-appellant.
2. As part and parcel of the afore-described purchase and assignment, the defendant, General Motors Acceptance Corporation, obtained a certificate of title from the Department of Motor Vehicles of the State of New York, which certificate of title reflected the lien of the defendant-appellant on the subject vehicle. Under 62A McKinney § 2118 the notation of the lien on the New York certificate of title perfected the security interest of General Motors Acceptance Corporation in the collateral. The certificate of title obtained in New York remains in the possession of the defendant-appellant and has never been surrendered to any other person or governmental agency.
3. On or about the 13th day of June, 1975, the bankrupt established a change of residence from New York to Ardmore, Oklahoma. On or about the same date, the bankrupt submitted his application for registration of the subject vehicle to the Oklahoma Tax Commission. At this time the bankrupt did not surrender the New York certificate of title described above. Subsequent thereto, the State of Oklahoma issued a certificate of title on the subject vehicle to the bankrupt.
4. The bankrupt filed his petition in bankruptcy on October 18, 1976, and was on that date duly adjudged a bankrupt. As of that date, the defendant had not filed any financing statements in Oklahoma reflecting its security interest in the subject vehicle. The bankrupt has been a resident of the State of Oklahoma from June 13, 1975, *951 to the date of the filing of the petition in bankruptcy.
The issue presented on appeal is:
"Whether the Bankruptcy Judge erred in concluding that the notation of the defendant's lien on a New York Certificate of Title, which remained outstanding and unsurrendered upon the Bankrupt's relocation to Oklahoma from New York, was insufficient to maintain a perfected security interest in the subject vehicle under 12 [12A] O.S. § 9-103(4)."
In the Findings of Fact and Conclusions of Law filed by the Bankruptcy Judge, it is noted as follows:
"Both parties concede that perfection, or the lack thereof, is to be determined by application of Oklahoma law. The defendant urges that under 12A Okl.St. Ann. § 9-103(4) the perfection of its interest pursuant to New York law was effective through the date of bankruptcy by the New York title remaining outstanding and unsurrendered. * * *. "The trustee maintains that upon issuance of the Oklahoma title the New York certificate became a nullity; that 12A Okl.St.Ann. § 9-103(4) was rendered inoperable and the law of New York no longer applicable; that perfection is to be determined solely by reference to Oklahoma law; and that the interest of defendant ceased to be perfected more than a year prior to bankruptcy upon expiration of the four month grace period accorded secured parties by 12A Okl.St.Ann. § 9-103(3)."
Title 12A O.S.A. § 9-103(3) and (4) provide:
"(3) If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including conflict of laws rules) of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this state and it was brought into this state within 30 days after the security interest attached for purposes other than transportation through this state, then the validity of the security interest in this state is to be determined by the law of this state. If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state." "(4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."
In reviewing the Findings and Recommendations of the Magistrate, it is important to note that an automobile certificate of title issued under the Oklahoma Motor Vehicle Act is not a muniment of title. In Medico Leasing Company v. Smith, 457 P.2d 548, 551 (Okl.1969) it was stated:
"It has long been held by this court that a certificate of title to an automobile issued under the motor vehicle act is not a muniment of title which establishes ownership, but is merely intended to protect the public against theft and to facilitate recovery of stolen automobiles and otherwise aid the state in enforcement of its *952 regulation of motor vehicles. (citing cases). This rule was not changed with the passage of the Uniform Commercial code. * * *."
In General Motors Acceptance Corporation v. Whisnant, 387 F.2d 774 (5th CCA, 1968) the case was submitted to the Bankruptcy Court, the Trial Court and the Appellate Court on the following undisputed facts. A certificate of title on the automobile was issued by the State of Virginia and the security interest of GMAC was noted thereon and perfected under Virginia law. No certificate of title on the automobile was ever issued by the State of Georgia and GMAC did not file a notice of lien on the automobile with the State Revenue Commissioner of Georgia. It was stipulated that GMAC complied with the applicable laws of the State of Maryland and State of Virginia as to the validity and perfection of its security interest in the automobile. The Referee found that GMAC had notice of the bankrupt's military orders and notice that the automobile would be taken out of Virginia and into Georgia within thirty days. The Court found:
"* * * This brings us to an in pari materia consideration of the Uniform Commercial Code as it was enacted in Georgia. It appears that § 109A-9-103(4) of that Act is precisely applicable. It provides, after other situations involving movable personality are set out in subparagraphs (2), and (3), that (quotes subsection [4] of UCC).
"Virginia requires indication of a security interest on its certificate of title as a condition of perfection. * * *."
The Court held in favor of GMAC.
In Re White, 266 F.Supp. 863 (USDC, N.D.N.Y., 1967) was submitted to the Bankruptcy Court and the District Court. The opinion states that the review involves only the interpretation and applications of Sections 9-103(3) and (4) of the Uniform Commercial Code. The bankrupt, a member of the armed services, purchased a mobile home while living in Virginia. He executed a conditional sales contract, which was assigned to the Philadelphia National Bank and a certificate of title was issued by the Virginia Motor Vehicle Bureau, which indicated the conditional sales contract. It was stipulated that the lien of the Bank was properly perfected under the applicable laws of the State of Virginia. The mobile home was finally moved to the State of New York. The Bank was notified by the bankrupt that the mobile home had been relocated in the State of New York. It was conceded that the Bank failed to file evidence of its conditional contract lien at any time or at any place in the State of New York. There is no indication that a New York Certificate of Title was ever obtained.
The New York Court construed subsection (4) as follows:
"The opening language of subsection (4) indicates an intent to provide that where a security interest in personal property is perfected by indication of same upon a certificate of title as required by statute of another jurisdiction, the provisions of subsection (3) are not applicable. These circumstances or background facts exist here. Since it is stipulated that the security lien was properly perfected under the laws of Virginia, any further attack upon such perfection in any jurisdiction must be based upon the law of that State. No such attack is made here and the filing provisions of subsection (3) are not applicable. Unless construed as above subsection (4) would have little or no meaning. `There is a presumption against a construction which would render a statute ineffective or inefficient * * *.' Bird v. United States, 187 U.S. 118, at 124 [23 S.Ct. 42, 44, 47 L.Ed. 100]."
In Re Smith, 311 F.Supp. 900 (USDC, W.D.Va.1970), another bankruptcy case, dealt with a mobile home purchased in West Virginia. The security agreement was assigned to Commercial Credit Corporation, which issued a certificate of title with the creditor's lien indicated thereon. It was admitted the lien was properly perfected under West Virginia law. Approximately 30 days after the purchase, the debtor removed the mobile home to Virginia. Bankruptcy was thereafter instituted. This case is in accord with In Re White, supra.
*953 In the Matter of John R. Antonuzzo, 2 Bankr.Ct.Dec. 737, the bankrupt purchased a truck, executing a security agreement and the State of Indiana issued a certificate of title bearing a notation of the security interest. A financing statement was also filed in Indiana. Subsequently the bankrupt moved the truck to New York, where it was registered, the registration certificate bearing the New York address as bankrupt's residence. The trustee sought to have the security interest declared null and void. In a decision rendered on June 10, 1976, the New York Bankruptcy Judge held that the security interest was valid pursuant to UCC § 9-103(4); that § 9-103(4) supersedes § 9-103(3) in cases involving certificates of title.
To the same effect see In the Matter of Marjorie Mae Maxwell (Ford Motor Credit Company v. Neal Ossen, Trustee), United States District Court for the Northern District of Connecticut, No. H-75-325, November 10, 1975; In re Gordon Eldridge Stoner and Katherine Holley Stoner (Wachovia Bank and Trust Company, N.A. v. Charles Y. Boyd, Esq.), United States District Court for the Northern District of Alabama, Nos. 14823-M and 14824-M, June 11, 1974.
In Deposit National Bank of Mobile County v. Chrysler Credit Corporation, 48 Ala.App. 161, 263 So.2d 139 (1972), a bank brought action against the debtors on a note and attachment was issued against the debtor's automobile which was the subject of a conditional sales contract. The assignee of the sales contract replevied the automobile and the car was sold, subject to final judgment. The Alabama Court held that under the Uniform Commercial Code, where an automobile had been purchased in a sister state which required perfection of security interest by entry on certificate of title and assignee's security interest was so perfected, assignee was not required to take further action in the state to protect its security interest even though debtors registered the automobile in the state after bringing the automobile from the sister state. To the same effect see Town House Motel, Inc. v. Ward, 2 Ill.App.3d 699, 276 N.E.2d 809 (1971).
In Associates Discount Corp. v. Reeves, Oklahoma Court of Appeals, July 31, 1973, 44 Okla.Bar Assn.J. 2559, the Oklahoma Court held contrary to the above cited law. In this case one Wayne Reeves purchased a truck-tractor in Florida on May 1, 1969. He executed a note and security agreement in favor of the appellant, which security agreement was properly filed and recorded in the State of Florida. Reeves drove the truck and part of the time he leased the truck to another company. On January 16, 1970, he turned the truck over to one Taylor. At that time he executed two instruments, one designated as a Lease and the other as a Power of Attorney. The lease was a lease purchase agreement, whereby Reeves sold the truck to Taylor, with Taylor assuming the obligation to pay Associates Discount Corporation on the security agreement. The Power of Attorney was a broad power of attorney giving Taylor full power and authority over the truck and specific authority to operate, control and maintain it. Taylor thereupon brought the truck to Oklahoma and on January 6, 1971, obtained an Oklahoma Certificate of Registration with the space for "Amount of Line" being left blank. Thereafter, Taylor sold the truck, which changed hands several times. The last purchaser executed a security agreement, which was assigned to the Central National Bank and Trust Company of Enid. The security agreement of Associates Discount Corporation was never filed within the State of Oklahoma. The Oklahoma Court of Appeals held that 12A O.S. 1971 § 9-103(3) controlled. In the opinion it was stated:
"Among other matters Associates contend that 12A O.S.1971 § 9-103(4) should control. * * *.
"The parties have provided this court with numerous Oklahoma cases, attempting to sustain their respective theories, but as stated by appellant in his brief, `This writer can find no cases from Oklahoma or other jurisdictions like the facts of this case.' Our research leads us to the same conclusion regarding Oklahoma cases. We find that most of the authors *954 of treaties on the UCC have not dealt with the proposition appearing in Paragraph 4, and as the facts were developed in the case now under review. The one article we have found and believe to be the correct interpretation is found in Anderson Uniform Commercial Code, Volume 4, Second Edition, 1971, wherein the author states at page 64 as follows:
"`Recognition of the title certificate issued in the state of origin and the perfection of the security interest noted therein continue only as long as the title certificate of the state of origin is the only certificate. Once a new certificate is issued in a second state it becomes `the jurisdiction which issued the certificate' and its law governs the perfection of a security interest.
"`The underlying rationale of Code § 9-103(4) is that there shall be only one title certificate for an automobile, that originally issued if it is still in existence, but the certificate of state # 2 when such a certificate is issued shall be the controlling system. It would be impractical to charge the public with notice of notations in prior cancelled certificates or applications, which, though still extant, had been issued in foreign unknown states. Consequently, once a certificate is issued in state # 2, it is the law of that state which determines whether there is a perfected security interest in the motor vehicle and the creditor must comply with the law of state # 2 in order to obtain perfection.
"`When a security interest attaches in another state to an automobile which is then brought into Pennsylvania and a Pennsylvania certificate of title is issued before the interest is perfected in any other state, the purchaser under the Pennsylvania certificate which does not note the existence of an outstanding security interest prevails over the holder of the security interest.
"`Once a motor vehicle title certificate is issued, its effect with respect to perfecting a security interest cannot be challenged on the ground that the agency improperly issued the certificate, as, for the reason that it did not require the surrender of an earlier certificate issued in another state.
"`When the automobile which is the collateral is brought into the state subject to a security interest noted on a title registration certificate of the state of origin or on the application for such title, a problem of rival certificates may arise if a new certificate is obtained for the vehicle in the second state which does not show the existence of the original security interest. In such case, the law and the certificate of the second state are controlling.
"`The fact that contrary to the statutory requirements in state # 2, a motor vehicle title certificate issued in state # 1 is not surrendered when a new title certificate is obtained in state # 2 with the result that the two certificates are concurrently extant does not invalidate the certificate issued in state # 2 in the absence of an express statutory provision to that effect. To the contrary, it is the certificate of title issued by state # 2 which is the `certificate' for the purpose of determining the existence and perfection of a security interest in the motor vehicle.'"
The Associates Discount Corp. v. Reeves case, supra, was also reported in 13 UCC Reporting Services, pages 709 et seq. and the Editor's Note in said publication, appearing at page 710 states, in part:
"(1) By direction of the Supreme Court, this opinion is not to be considered as precedent or authority and will not be published in the Pacific Reporter.
"(2) While the court's opinion is not clear on the point, the vehicle involved was in fact covered by a Florida certificate of title (information from counsel).
"(3) The result by the court is supported by the 1972 revision of Section 9-103, although that revision has not been adopted in Oklahoma. See Section 9-103(2) (1972 Revision) and Comments thereto."
*955 In Re Cox, 543 F.2d 1277, 1279 (10th CCA 1976) the Tenth Circuit stated with reference to Oklahoma Court of Appeals' opinions:
"In * * * the Oklahoma Court of Appeals * * *. The Gird case is not a binding precedent in Oklahoma, but it may be considered as authority on the subjects therein considered. It is not unlike the hundreds of decisions written by able district judges in the federal court system which are reported in the Federal Supplement. While these cases are not precedents, they are often cited as authority by all courts in appropriate cases."
In the Matter of Martindale, 429 F.Supp. 131 (USDC, W.D.Okl.1976) the bankruptcy court found that the bankruptcy trustee had prior and superior interest in a pickup truck to the claim of a creditor by reason of the creditor's failure to reperfect its security interest in Oklahoma. On appeal to the District Court reversed the Bankruptcy Court. The bankrupt and her husband executed a combined financing statement and security interest in Phoenix, Arizona, where they resided. Phoenix perfected its security interest in accordance with the laws of the State of Arizona by filing a copy of the security instrument and application for a certificate of title with the Vehicle Division so that a certificate of title was thereafter issued to the bankrupts showing on its face the lien of Phoenix. Arizona law required that the security instrument be maintained in the Vehicle Division files until the security interest is discharged. A non-negotiable memorandum of title is issued to the owner with the creditor's lien noted on it while the original certificate of title is maintained in the Vehicle Division files along with the security instrument. When the lien is discharged it is delivered to the owner. The Court said Arizona is a "title state" inasmuch as security interests are perfected in that manner. The bankrupts then moved from Arizona to Texas, which is also a "title state" and Phoenix again perfected its security interest. No filing of security interests was required for perfection in Texas, but an application for a title is submitted and two titles are issued. One is designated "original" and the second as "duplicate original" and the original is given to the secured party and the duplicate original to the owner. Thereafter, the bankrupts moved to Oklahoma and brought the vehicle with them. The bankrupts prepared an application for registration in accordance with 47 O.S.1971 § 22.12 along with an application for a certificate of title as required by 47 O.S.1971 § 23.3. The State of Oklahoma received the application for certificate of title, showing on its face the lien of Phoenix and prepared the certificate of title, but retained it in its file pending receipt of a negotiable certificate of title from Texas. This certificate of title was never delivered to the bankrupts. The Court in the opinion noted that "Oklahoma is a `filing state' rather than a `title state' and perfection is accomplished by the filing of security instruments in specified locales." Phoenix never filed the required instruments in Oklahoma. The District Court quoted the language of 12A O.S.1971 § 9-103(4) and then stated:
"Therefore, the perfection of the security interest in Phoenix would be controlled by the law of Arizona or more probably Texas. However, if the Oklahoma certificate of title was issued, then Phoenix would have been required to perfect its security interest in accordance with Oklahoma law, which requires filing pursuant to 12A O.S.1971 § 9-401, which was not done herein. As indicated in 4 Anderson, Uniform Commercial Code, Section 9-103:23, at page 64:
"`The underlying rationale of Code § 9-103(4) is that there shall be only one title certificate for an automobile, that originally issued if it is still in existence, but the certificate of state # 2 when such certificate is issued shall be the controlling system. It would be impractical to charge the public with notice of notations in prior cancelled certificates or applications, which, though still extant, had been issued in foreign unknown states. Consequently, once a certificate is issued in state # 2, it is the law of that state *956 which determines whether there is a perfected security interest in the motor vehicle and the creditor must comply with the law of state # 2 in order to obtain perfection."
The Court then found that since the title certificate did not issue, the accomplished perfection in Arizona or Texas would continue in Oklahoma pursuant to 12A O.S. § 9-103(4).
The Court, thus, feels compelled to affirm the decision of the Bankruptcy Judge pursuant to Rule 810 of the Rules of Bankruptcy Procedure.
IT IS, THEREFORE, ORDERED that the Decision of the Bankruptcy Judge be and the same is hereby affirmed and adopted.