**In re Timothy Lassiter BRANNAN and Lana Zimmerman Brannan, Debtors.**

**Bankruptcy No. 379–00011.**

District Court, Virgin Islands, D. St. Thomas and St. John.

July 15, 1980.

David S. Hoffenberg, St. Thomas, Charlotte Amalie, V.I., for debtors.

Robert E. Messick, Loud, Watts & Murnan, St. Thomas, Charlotte Amalie, V.I., for First Union Bank of North Carolina.

## OPINION

CHRISTIAN, Chief Judge.

This matter is before the Court on appeal from a March 24, 1980 Order of the Bankruptcy Court authorizing abandonment of the debtors' 1977 Honda CVCC Wagon. The Order directed the trustee in bankruptcy to abandon the Honda to a secured creditor, First Union National Bank of North Carolina. On April 9, 1980 this Court stayed the Order of Abandonment pending resolution of the instant appeal. The central issue presented is whether the Honda is of "inconsequential value" to the bankrupts' estate. 11 U.S.C.A. § 554(b). Because the Bankruptcy Court failed to make the factual findings necessary for such a determination, the Order of Abandonment will be

vacated and the case remanded for a new hearing.

From what can be gleaned from the exhibits and the parties' memoranda, debtors Timothy L. Brannan and Lana Z. Brannan's first contact with the Bank relevant to the case at bar occurred in September, 1976. At that time, the Brannans entered an agreement with the Bank to establish an Instant Cash Reserve Account. The account apparently allowed the Brannans to write checks in excess of their balance.

The next contact came in September, 1977 when the Brannans purchased a new 1977 Honda CVCC Wagon in North Carolina. The Brannans financed their purchase with an auto loan from the Bank and executed a Security Agreement which listed the Honda as collateral for the loan. The Security Agreement also stated that the Honda would secure any present or future loans from the Bank.[1] The certificate of title for the Honda issued by the State of North Carolina contained a notation that the Honda was subject to a first lien held by the Bank.

At an unspecified time thereafter, the Brannans moved to St. Thomas. On December 10, 1979 the Brannans filed a petition for relief in St. Thomas under Chapter 7 of the Bankruptcy Reform Act of 1978. On December 20, 1979 and January 28, 1980 the Bank first filed financing statements covering the Honda in St. Thomas.

On request of an interested party such as the Bank, and after notice and a hearing, the Bankruptcy Court "may order the trustee to abandon any property of the estate that is . . . of inconsequential value to the estate." 11 U.S.C.A. § 554(b). The Honda is of "inconsequential value" if the Bank's lien exceeds the Honda's present market value and if the Bank's security interest in the vehicle is superior to that of the trustee. *See Central States Life Ins. Co. v. Koplar Co.*, 80 F.2d 754, 757 (8th Cir. 1936), *cert. denied* 298 U.S. 687, 56 S.Ct. 955, 80 L.Ed. 1406. Unfortunately, the Bankruptcy Court made no findings, nor is

---

1. The parties dispute the applicability of this provision in the Instant Cash Reserve Account.

there a basis in the record for findings, of the existence of either of these two elements. Instead, the Order of Abandonment merely states the conclusion that the Honda is without value to the estate.

■ Several findings are essential to a determination of the existence of the first element, the Brannans' equity in the Honda.[2] Firstly, the Honda's fair market value must be ascertained. No such finding was made. Secondly, the amount of the Bank's lien on the vehicle must be established. It is clear that a balance of $2,430.34 remains on the Brannans' auto-loan and a balance of $1,093.68 remains on their Instant Cash Reserve Account. However, the Bankruptcy Court did not make the findings necessary to resolve the Brannans' contention that the Instant Cash Reserve Account is not secured by the Honda, and, therefore, that the Banks' lien is only for the balance remaining on the auto loan.

■ The Brannans maintain that the future advance clause in the Security Agreement does not cover the Instant Cash Reserve Account. The parties' intent as to the scope of the clause controls this issue because future advance clauses[3] on printed security agreements only apply to future debts clearly and reasonably contemplated by the parties. *See Kimball Foods, Inc. v. Republic National Bank,* 557 F.2d 491, 495 (5th Cir. 1977) (construing Texas law); *In re Eshleman,* 10 U.C.C.Rep.Ser. 750, 752 (E.D.Pa. 1972); *John Miller Supply Co., Inc. v. Western State Bank,* 10 U.C.C.Rep.Ser. 1329, 1333 (Wis. 1972). Yet, no such determination of the parties' intent was ever accomplished by the Bankruptcy Court. This omission is unacceptable because there are indications that the parties did not envision the Security Agreement as securing the Instant Cash Reserve Account.[4] Thus, the issue of the Brannans' equity in the Honda cannot be resolved without additional findings.

Similarly, factual findings essential to a determination of the second element of "inconsequential value," the superiority of the Bank's security interest in the Honda over that of the trustee in bankruptcy, are also absent from the Bankruptcy Court's Order. These omissions can best be highlighted by tracing the analysis necessary to determine

2. The Bank has the burden of proof on the issue of the debtors' equity in the Honda. *See* 11 U.S.C.A. § 362(g).

3. The Bank incorrectly points to 11A V.I.C. § 9–204(3) as legalizing the applicability of the future advance clause in the parties' Security Agreement to the Instant Cash Reserve Account. Instead, it is § 9–204(5) that sanctifies such clauses: "(o)bligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment."
The Brannans contend that the future advance clause cannot encompass the Instant Cash Reserve Account. They reason that § 9–204(5) only applies to *future* advances whereas the Bank made its commitment to the Brannans on the *Instant Cash Reserve Account prior to* the Security Agreement which contains the future advance clause. This argument is without merit, however, because § 9–204(5) expressly includes advances made pursuant to commitment. Furthermore, even if 9–204(5) is read narrowly, so as to be inapplicable to advances made pursuant to a commitment entered prior to a security agreement which provides that future advances will be secured by the same collateral, no statutory provision explicitly prohibits such an arrangement. In fact, just the opposite is the case. The definition of "value" at 11A V.I.C. § 1–201(44) implies that a security interest may be given to secure an antecedent debt.

4. For example, when a security interest in a motor vehicle is perfected by a title certificate notation, a perfected security interest as to future advances may be created. This is done by adding after the certificate notation of the amount of the lien from the auto loan the words "together with future advances." Anderson, Uniform Commercial Code § 9–204:16 at 190 (2d ed. 1971). The Bank perfected its security interest in the Honda in just this matter but made no mention of future advances or the Instant Cash Reserve Account. Thus, it might be inferred that the Honda was not intended to secure that debt.
However, the fact that the Brannans listed the Instant Cash Reserve Account debt as unsecured in their Statement of Financial Affairs submitted in connection with their bankruptcy petition is not "entitled" to great weight in the determination of the parties' intent. *Id.* § 9–204:16 at 189.

the relative priorities of the interests of the Bank and trustee in the Honda.

■ We begin with 11 U.S.C.A. § 544(a)(1) which bestows on the trustee in bankruptcy the status of a judgment lien creditor who obtained a judgment on the date the debtors' bankruptcy petition was filed. Thus, the trustee's interest in the Honda is superior to any security interest that was unperfected as of the date the Brannans filed their petition, December 10, 1979. See 11A V.I.C. § 9–301. The Bank perfected its security interest in the Virgin Islands by filing on December 20, 1979 and January 28, 1980. Accordingly, the Bank's interest is inferior to the trustee's unless the Bank's perfection of its security interest in North Carolina, which predates the filing of the petition, remained valid in the Virgin Islands until the Bank filed here.[5] It is the resolution of this issue of the vitality of the North Carolina perfection in the Virgin Islands that requires findings not made by the Bankruptcy Court.

Because the State of North Carolina issued the sole certificate of title for the Honda and it contains a notation of the Bank's security interest, our analysis of the perfection of the Bank's security interest in the Virgin Islands is governed by North Carolina law. See 11A V.I.C. § 9–103(3), (4).[6] The relevant North Carolina statute,[7]

N.C.Gen.Stat. § 25–9–103(2)(a), (b) reads as follows:

(2) Certificate of Title.—

(a) This subsection applies to goods covered by a certificate of title issued under a statute of this State or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.

(b) Except as otherwise provided in this subsection, perfection and the effect of perfection or nonperfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until four months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this section.

Accordingly, the facts which the Court must be aware of in order to make a determination are when the Honda was removed from North Carolina and if and when the Honda was registered in the Virgin Islands.[8] Once again, none of these crucial

---

**5.** If the perfection in North Carolina remained valid in the Virgin Islands until the Bank perfected its security interest here then the perfection is continuous and relates back to the earlier North Carolina perfection. See 11A V.I.C. 9–303(2).

**6.** If the Honda is still "covered" by the North Carolina certificate of title then 11A V.I.C. § 9–103(4) controls. Most cases hold that the original certificate of title still controls. See e. g. In re Foster, 445 F.Supp. 949 (N.D.Okl. 1978); In re Maxwell, 18 U.C.C. 504, 505 (D.Conn. 1975); In re White, 266 F.Supp. 863, 866 (N.D.N.Y. 1967). But see White & Summers, Uniform Commercial Code at 857 (1972) (Stating that once the automobile is registered in a new state it is probably no longer "covered" by the certificate of title of the original state).

Alternatively, if the Honda is not still "covered", then 11A V.I.C. § 9–103(3) controls because the Honda was subject to the Bank's security interest when it was shipped from

North Carolina to the Virgin Islands. Regardless of whether subsection (3) or (4) governs, however, the Court must look to the law of North Carolina, including its choice of law rules.

**7.** It might be contended that the Honda was no longer "covered" by the certificate of title as required by § 25–9–103(2)(a). If not, then the same legal result follows because Virgin Island law governs. See § 25–9–103(3)(a).

**8.** If the Bank accomplished its filings prior to four months after the Honda was removed from North Carolina or if it filed before the Honda was registered in the Virgin Islands, then North Carolina law controls and the Bank's interest is superior to the trustee's. On the other hand, if the four month period had elapsed and the vehicle was registered before the Bank filed then Virgin Islands law governs and the trustee's interest is superior. See 11A V.I.C. §§ 9–301, 9–103(3).

issues have been addressed. Hence, factual findings essential to a determination of the existence of both elements of "inconsequen- tial value" are missing from the Bankrupt- cy Court's Order. Thus, the case must be remanded for additional findings.