**In re AIR VERMONT, INC., and North Atlantic Airlines, Inc., Debtors.**

**Bankruptcy Nos. 84–00019, 84–00017.**

United States Bankruptcy Court, D. Vermont.

May 4, 1984.

Genina C. Bowman, for Comair, Inc.,

Joseph C. Palmisano, Barre, Vt., for debtors,

Douglas J. Wolinsky, Burlington, Vt., for Gene R. Kazlow.

## MEMORANDUM AND ORDER ON MOTION OF COMAIR, INC., FOR ABANDONMENT OF PROPERTY

CHARLES J. MARRO, Bankruptcy Judge.

This proceeding is instituted pursuant to § 554(b) of the Bankruptcy Code which provides that on request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate. By virtue of § 1107 of the Bankruptcy Code, the debtor in possession has the same rights, powers and duties as a trustee. Therefore, the Motion of Comair, Inc., is directed against the debtor. Gene R. Kazlow appears as a party in interest. In effect, Comair, Inc., is seeking to terminate the automatic stay prescribed by § 362 of the Bankruptcy Code so that it may regain possession of the aircraft hereinafter described and sold by it at various times to the Debtor pursuant to purchase agreements.

The continued hearing on the Motion of Comair, Inc., for abandonment was held, after notice, on April 13, 1984.

The issues for determination by this Court are whether Comair has perfected security interests in the aircraft, whether there is any equity in them and, if leave from stay is to be granted, whether there is cause for terminating the stay, including the lack of adequate protection, and also whether the property is necessary to an effective reorganization.

## BACKGROUND

The Debtor, Air Vermont, Inc., commenced business in September, 1981, as a commuter airline operating from the International Airport at South Burlington, Vermont, to various points mostly in the Northeast. It has suffered the growing pains of over-expansion at a rapid rate to the point that it started having financial difficulty which necessitated the filing of a Petition for Relief under Chapter 11 of the Bankruptcy Code on January 31, 1984.

On the same day it filed an Emergency Motion for Authority to Enter Into an Interim Secured Financing Agreement with certain lenders known as VCL Partners to incur debt with super priority over other administrative expenses and senior to existing liens including that of the Internal Revenue Service. This Motion recited that the VCL Partners were willing to lend the Debtor on an interim basis, pending negotiations for a longer-term financing agreement, immediately $100,000.00 and up to $200,000.00 maximum on the terms and conditions set forth in an attached Agreement between the Debtor and the VCL Partners as "Lender."

Sometime ago, VCL Partners withdrew financial support to the Debtor after having made claimed advances totaling $122,644.72. Shortly thereafter the Debtor ceased operating as an airline.

## FACTS

The aircraft with engines which Comair seeks to have abandoned are as follows:

1. A 1968 Piper Navajo PA31–310, FAA registration no. N9167Y, manufacturer serial no. 31–220, left engine serial no. 67YL737–61 and right engine serial no. L2066–61.

This airplane with engines was purchased by the Debtor from Comair on December 22, 1981 under a written Purchase Agreement and an Aircraft Security Agreement executed by both parties for an

agreed purchase price of $70,000.00, payment of which was evidenced by a Promissory Note in the principal sum of $70,000.00 payable in 60 consecutive monthly installments beginning December 22, 1981 and ending November 22, 1986. The installments payments included interest at the rate of 16% per annum and the note was signed by the Debtor, Air Vermont, Inc., and by Gene R. Kazlow, individually.

The Purchase Agreement included a provision that within 15 days of the date of the agreement purchaser was to submit to Comair the complete aircraft registration application, bill of sale for the aircraft, filing fees and all other documents necessary in order to receive a certificate of registration from the Federal Aviation Administration in Oklahoma City, Oklahoma. In fact, the bill of sale and the aircraft security agreement showing Air Vermont, Inc., as debtor and Comair, Inc., as secured party were recorded in the office of Federal Aviation Administration, FAA Aircraft Registry, Oklahoma City, Oklahoma, on March 29, 1982. Also financing statements showing Air Vermont, Inc., as debtor and Comair, Inc., as secured party and describing the same aircraft were filed in the office of the Town Clerk of Waitsfield, Vermont on February 16, 1982 and in the Office of the Secretary of State of the State of Vermont on February 18, 1982.

As of the date of the hearing on April 13, 1984 the Debtor had not defaulted on any of its monthly installments owing under the Purchase Agreement and note; the balance due was then $50,101.69 and the fair market value of this aircraft with engines was about $50,000.00

2. 1968 Piper Navajo PA31–310, FAA registration no. N711VV, manufacturer serial no. 31–319, left engine serial no. L556–61 and right engine serial no. L484–61

3. 1968 Piper Navajo PA31–310, FAA registration no. N77AL, manufacturer no. 31–524, left engine serial no. L6576–61A and right engine serial no. L753–61.

These two airplanes with engines were purchased by the Debtor from Comair on September 3, 1982 under a written Purchase Agreement for an agreed purchase price of $110,000.00 of which the sum of $5,000.00 was apparently a down payment and the balance of $105,000.00 was evidenced by a promissory note signed by the Debtor and guaranteed by Gene R. Kazlow dated September 3, 1982 in the principal sum of $105,000.00 with interest at 15⅝% per annum and payable in 60 consecutive monthly installments of $2,500.00 each, representing principal and interest, beginning on the 18th day of December, 1982, and continuing on the 18th day of each subsequent month through and including September, 1987. This Purchase Agreement contained the same provision with reference to registration of the aircraft as was contained in the agreement relating to the purchase of the 1968 Piper Navajo PA31–310 described under paragraph numbered "1," supra. As to the Piper Navajo PA31–310, serial number 31–319, a bill of sale dated September 3, 1982 showing Comair, Inc., as seller and Air Vermont, Inc., as purchaser was recorded on October 22, 1982 in the office of the Federal Aviation Administration. An aircraft security agreement showing Air Vermont, Inc., as debtor and Comair, Inc., as secured party with a description of this aircraft, engines and propellers was recorded on October 22, 1982 in the office of the Federal Aviation Administration, F.A.A. Aircraft Registry, Oklahoma City, Oklahoma. As to the 1968 Piper Navajo 31–310, manufacturers number 31–524, a bill of sale showing Comair, Inc., as seller and Air Vermont, Inc., as purchaser dated September 3, 1982 and an aircraft security agreement showing Air Vermont, Inc., as debtor and Comair, Inc., as secured party and describing the Piper Navajo airplane PA–310, serial no. 31–524, together with the engines and propellers were recorded on October 22, 1982 in the office of the Federal Aviation Administration, F.A.A. Aircraft Registry, Oklahoma City, Oklahoma. In addition financing statements showing Air Vermont, Inc., as debtor and Comair, Inc., as secured party and describing both the Piper Navajo aircraft serial no. 31–319 and the Piper Nava-

jo aircraft serial no. 31–524 as collateral were filed in the offices of the Secretary of State of the State of Vermont and in the office of the Town Clerk of Waitsfield, Vermont, on October 15, 1982 and October 12, 1982, respectively.

As of the date of the hearing on April 13, 1984, the Debtor had not defaulted on any of its monthly installments owing under the Purchase Agreement of September 3, 1982 and the note for $105,000.00 dated September 3, 1982. The balance then due on the note for $105,000.00 was $81,258.31, whereas the fair market value of the 1968 Piper Navajo N711VV, serial no. 31–319, with engines was $45,000.00 and the fair market value of the 1968 Piper Navajo N77AL, serial no. 31–524, with engines was $50,000.00 for a total of $95,000.00.

4. A 1977 Piper Navajo Chieftain PA31–350, FAA serial no. N72CZ, manufacturer serial no. 31–7752154, left engine serial no. L3661–61A and right engine serial no. L261–68A.

This 1977 Piper Navajo Chieftain airplane with engines was purchased by the Debtor from Comair on February 28, 1983 under a written Purchase Agreement for the sume of $125,000.00 evidenced by a promissory note of the same date and in the sum of $125,000.00 payable with interest at the rate of 16% per annum in 60 consecutive monthly installments of $3,000.00 each, representing principal and interest, beginning on the 1st day of March, 1983 and continuing on the 1st day of each subsequent month through and in-cluding February, 1988. This note was signed by the Debtor and payment was guaranteed by Gene R. Kazlow. As security for the payment of this aircraft with engines and propellers, the Debtor executed and delivered to Comair, Inc., an aircraft security agreement dated February 28, 1983 with Air Vermont, Inc., shown as debtor and Comair, Inc., as secured party and describing the aforesaid aircraft with engines and propellers as collateral. This aircraft security agreement was no recorded in the office of the Federal Aviation Administration, F.A.A. Aircraft Registry, Oklahoma City, Oklahoma. However, a financing statement showing Air Vermont, Inc., as debtor and Comair, Inc., as secured party and describing the collateral as One (1) Piper Navajo Aircraft S/N 31–7752154, Model PA31–350, was filed in the office of the City Clerk, apparently South Burlington City Clerk, on March 9, 1983.

As of the date of the hearing on April 13, 1984 the Debtor had not defaulted on any of its monthly payments owing under the Purchase Agreement and note in the sum of $125,000.00 dated February 28, 1983. The balance then due on this note was $104,256.04 and the fair market value of this aircraft with engines was about $120,000.00.

Schedule A–2 filed with the Debtor's Petition for Relief Under Chapter 11 shows Comair as a secured party with the security, market value and amount of claim shown as follows:

| Description of Security | Market Value | Amount of Claim |
|---|---|---|
| Piper Navajo Tail No. N91674 | 75,000 | 54,864.00 |
| 2 Piper Navajos Tail Nos. N711VV; N77AL | 160,000 | 88,395.56 |
| Piper Chieftan 31–7752154 Tail No. N72C2 | 140,000 | 110,487.00 |

Gene R. Kazlow has been and is a principal stockholder of the Debtor and he is still Chairman of the Board.

## DISCUSSION

Before the hearing on the Motion of Comair, the Court held a pre-hearing confer-

ence for the purpose of ascertaining the issues involved and the position of the parties. At this conference the Attorney for the Debtor represented to the Court that he did not have any appraisers available for the hearing but that he had been informed that the value of the aircraft was less than the amount due to Comair and, therefore, he had no objection to the granting of the Motion. Kazlow, on the other hand, objected strenuously to the abandonment of the aircraft and it was his position that if given a period of at least five weeks the aircraft could be sold for more than the amount due to Comair. Comair through its attorney felt that the Court should not grant the requested time and it finally decided that the Court should proceed with the hearing.

At the pre-hearing conference there was some discussion as to whether Kazlow could be in the position of an objector and during the actual hearing Comair objected strenuously to Kazlow as a party in interest.

Since Kazlow is a principal stockholder and as a guarantor of the indebtedness to Comair and he is at least a contingent creditor, it is clear that he has a considerable stake in the outcome of this litigation. His position is supported by § 1109(b) which provides:

"A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

§ 1109(b) merely states that certain designated parties are "parties in interest" and thus presumably do not have to formally invervene in a chapter 11 case. 5 Collier 15th Ed. 1109–23.

From the testimony at the hearing and the exhibits introduced, it is evident that Kazlow's objection to the Motion is well taken with a resulting benefit to the estate of the Debtor.

Under § 554(b) if Comair is to prevail it must establish that the aircraft are burdensome to the estate or that they are of inconsequential value to the estate. In addition, if § 362(d) for termination of the stay is to come into play, Comair must establish cause for terminating the stay, including lack of adequate protection *or* that the Debtor does not have any equity in the aircraft and that they are not necessary to an effective reorganization.

It was clearly established at the hearing that all payments under the security agreements and notes are current and that, therefore, Comair has adequate protection. The Debtor has filed a Plan for Liquidation under Chapter 11 and it is the only one pending. Therefore, it appears that the aircraft are not as of now necessary to an effective reorganization. But Comair must still establish that the Debtor has no equity in the property.

The balances due for the various types of aircraft have been fixed by the Stipulation executed between Comair and the Debtor. At the hearing Comair attempted to establish value by an Affidavit executed by Thomas Waters, Controller—Treasurer of Comair, Inc., but, upon objection by Kazlow, this Affidavit was not admitted. The Court then gave Comair permission to establish the balances due by stipulation with the Debtor. Comair took advantage of this opportunity but, in addition, included in the Stipulation values of the various aircraft which indeed went beyond the instruction of the Court. This clearly was unfair to Kazlow since he was not given an opportunity to examine as to the basis for the valuations placed upon the aircraft by the Debtor. In fact the Debtor did not have appraisers available for the hearing and any Stipulation filed by the Debtor as to value on mere hearsay was not admissible.

The parties improved as expert witnesses on value Roger Van Pelt, on behalf of Comair, and John E. Porter, on behalf of Kazlow. Their testimony as to value together with the established amounts due as to each aircraft is as follows:

| Aircraft | Value (Van Pelt) | Value (Porter) | Amount Due Established |
|---|---|---|---|
| Piper Navajo PA 31–310 N9167Y | $40,000.00 | $50,000.00 | $50,101.69 |
| Piper Navajo PA 31–310 N711VV | $35,000.00 | $45,000.00) | )|
| Piper Navajo PA 31–310 N77AL | $40,000.00 | $50,000.00) | For Both $81,258.31 |
| Piper Navajo Chieftain PA 31–350 N72CZ | $90,000.00 | $120,000.00 | $104,256.04 |

It is generally known that determination of the fair market value of property by appraisal is not an exact science. Some time ago, an astute Judge observed that the fair market value for property is what it will "fetch."

█ If the only testimony is that of appraisers as experts the Court, in reaching a conclusion as to market value, must give consideration to the weight and sufficiency of the expert and opinion testimony with due regard to the ability and character of the witness, his actions upon the witness stand, the weight and process of the reasoning by which he has supported his opinion, his possible bias in favor of the side for whom he testifies and any other matters which serve to illuminate his statements. 31 Am.Jur.2d 744 § 181.

In the instant case Appraiser Van Pelt was the one-half owner of Aviation One, Inc., a Cincinnati, Ohio based corporation which apparently deals in aircraft. He has been an aircraft salesman in excess of 25 years and during that period has performed appraisals of aircraft. He conducted the appraisal of the aircraft under consideration by going through historical records and taking a physical walk around the various planes, which he described as normal procedure. He submitted written reports of his appraisal for each aircraft, and these were admitted into evidence. On cross-examination, he conceded that he did not use the usual books which contain information as to the value of aircraft for the reason that the airplanes financed through Comair did not come within the parameters of such books. He was familiar with the one known as "National Aircraft Price Guide," and it was brought out on cross-examination that the values recited in this guide were much higher than the values that he placed on the various aircraft.

On the other hand, expert witness John E. Porter has been a pilot for a number of years and has flown each one of the aircraft under consideration from the time that they were purchased by the Debtor until the operation ceased in February of 1984. He testified he had not seen the aircraft since that time except for one, but even without recent observation, he was firm in the values that he placed on them. He was in court during all of the testimony by Van Pelt and his opinion was not changed even after giving due consideration to all of the deficiencies contained in the reports by Van Pelt.

The Court has also considered the dates of purchase of the aircraft and the fact that the Chieftain was actually worth $150,000.00 when it was purchased rather than the bargain price of $125,000.00. The Court recognizes that Porter is president of the Debtor, but after consideration of all of the factors involved in the two appraisals, it concludes that the values placed on the aircraft by Porter are more accurate and they are accepted.

█ It therefore appears that there is considerable equity in all of the aircraft with the exception of the Piper Navajo PA31–310, N9167Y. In addition, Comair does not have a perfected security interest

in the Piper Navajo Chieftain PA31–350 N72CZ for the reason that it did not record its security agreement showing Air Vermont, Inc., as debtor, and Comair, Inc., as secured party, in the office of the F.A.A. Aircraft Registry, Department of Transportation, Oklahoma City, Oklahoma, prior to the filing of the Petition for Relief under Chapter 11 by the Debtor.

Under Section 544 of the Bankruptcy Code the trustee (and the debtor by virtue of Section 1107) became a judicial lien creditor as of the commencement of the case with rights superior to those holding unperfected security interests.

49 U.S.C. § 1403 provides that the Administrator [Secretary of Treasury] shall establish and maintain a system for the recording of, inter alia, any conveyance which affects the title to, or interest in, any civil aircraft of the United States; any instrument executed for security purposes—which affects title to, or any interest in, any specifically identified aircraft engine—.

The procedure for the recording of aircraft title and security documents is prescribed by 14 CFR Part 49:11 which reads as follows:

"To be eligible for recording, a conveyance must be mailed to the FAA Aircraft Registry, Department of Transportation, Post Office Box 25504, Oklahoma City, Oklahoma 73125."

Subsection (c) of Section 1403 provides that no conveyance or instrument the recording of which is provided for by section 503(a) [subsec. (a) of this section] shall be valid in respect of such aircraft, aircraft engines—against any person other than the person by whom the conveyance or other instrument is given—or any person having actual knowledge thereof, until such conveyance or other instrument is filed for recordation in the office of the Administrator [Secretary of Transportation].

■ Since Comair failed to record the security agreement covering the 1977 Piper Navajo Chieftain PA31–350, FAA serial no. N72CZ, manufacturer serial no. 31–7752154, left engine serial no. L3661–61A and right engine serial no. L261–68A, its security interest is ineffective as against the debtor in possession which, under Section 1107 of the Bankruptcy Code, has the same rights as a trustee.

The Court notes that Comair undertook to file financing statements in certain offices in the State of Vermont. This action was of no avail inasmuch as the requirements as to recording prescribed by the Federal Aviation Act; i.e., 49 U.S.C.S. § 1402, § 1403 have preempted the Uniform Commercial Code and other state filing requirements. See 49 U.S.C.S. page 467, et sequi—Interpretive Notes and Decisions—Filing System and cases cited under this annotation.

The burden to establish proper recording is on Comair. See Rule 3001(d) of the Rules of Bankruptcy Procedure which provides that if a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected. Although this rule specifically applies to a proof of claim, no less should be required in this proceeding with the perfection of Comair's security interest in issue. With the failure of perfection, Comair stands as an unsecured creditor with reference to the 1977 Piper Navajo Chieftain. As a result the debtor in possession is entitled to retain it free and clear of any claim by Comair.

### ORDER

Now, therefore, upon the foregoing,

IT IS ORDERED:

1. The Motion of Comair, Inc., to Abandon Property is GRANTED as to the Piper Navajo PA 31–310, N9167Y, and DENIED as to the other three aircraft and engines.

2. The security interest of Comair, Inc., in the Piper Navajo Chieftain PA 31–350 N72CZ is declared INVALID as to the debtor in possession.