**In re Norman AYERS, and Betty Ayers, Debtors.**

**Bankruptcy No. 91–11516–012.**

United States Bankruptcy Court, D. Montana.

Feb. 26, 1992.

James A. Patten, Billings, Mont., for debtors.

Steven A. Lobdell, SA/US Atty., Helena, Mont., for SBA.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 12 case, the U.S. Small Business Administration (SBA) has filed an objection to the confirmation of the Debtors' Chapter 12 Plan on the ground the Plan fails to satisfy § 1225(a)(4) of the Bankruptcy Code. After hearing, briefs have been filed by SBA and the Debtors, so the matter is ripe for decision. For the reasons stated herein, I find the objection of SBA has merit.

SBA's argument is that the liquidation analysis of the Debtors fails to consider that a Chapter 7 Trustee, to satisfy § 1225(a)(4), would abandon the Debtors' real property as burdensome under § 554,

since there is no equity for the benefit of unsecured creditors, and thus there would be no tax consequence to the estate because it would be shifted to the Debtors. Specifically, SBA contends the over-encumbered farm property in the Debtors' liquidation analysis shows a tax consequence to the estate of $39,242.37,[1] whereas if the property was abandoned under § 554 of the Code, a tax consequence of $25,585.37 would flow through the estate to the Debtors individually, thereby reducing the hypothetical tax liability to the estate to $13,657, from the sale of other personal unencumbered assets. *In re Olson*, 930 F.2d 6 (8th Cir.1991) holds that abandonment of the bankruptcy estate property by the Trustee is not a sale or exchange of property under Internal Revenue Code § 1398, which will trigger a tax liability chargeable to the estate. *Id.* at 8. Accordingly, SBA contends that since the Chapter 7 Trustee would likely abandon the farm real estate, the decrease in tax liability to the estate would reduce the deductions against the unencumbered, non-exempt assets, thereby requiring the Debtors' Chapter 12 Plan to provide for increased payments to the unsecured claimants under § 1225(a)(4) of the Code.

Section 1225(a)(4) provides as a confirmation standard—

(a) Except as provided in subsection (b), the court shall confirm a plan if—

.　　.　　.　　.　　.

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were *liquidated under Chapter 7* of this title on such date. (Emphasis added).

This subsection is known as the "best-interest-of-creditors" test, and has been adopted from comparative Code sections found in Chapters 11 and 13 of the Code, namely,

---

**1.** While the matter was not raised by SBA, in the tax computation the Debtor used a three tier rate, ranging from 15% to 33%. Under the Revenue Reconciliation Act of 1990, the maximum tax rate on assets held for more than one year is 28%, even for tax payers in the 31% bracket.

§§ 1129(a)(7)(A)(ii), and 1225(a)(4). The standard is explained in the House Report on § 1129 as follows:

Paragraph (7) incorporates the former "best interest of creditors" test found in Chapter 11, but spells out precisely what is intended. With respect to each class, the holders of the claims or interests of that class must receive or retain under the plan on account of those claims or interest property of a value, as of the effective date of the plan, that is not less than the amount that they would so receive or retain if the debtor were liquidated under Chapter 7 on the effective date of the plan.

In order to determine the *hypothetical* distribution in a liquidation, the court will have to consider the various subordination provisions of proposed 11 U.S.C. 510, 726(a)(3), 726(a)(4), and the postponement provisions of proposed 11 U.S.C. 724. Also applicable in appropriate cases will be the rules governing partnership distributions under proposed 11 U.S.C. 723, and distributions of community property under proposed 11 U.S.C. 726(c). Under subparagraph (A), a particular holder is permitted to accept less than liquidation value, but his acceptance does not bind the class. (Emphasis added).

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 412–413 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6368, 6369. 5 *Collier on Bankruptcy,* ¶ 1129–37[7], pp. 1129–36 and 37 (15th Ed.) explains the provisions of 1129(a)(7), like § 1225(a)(4), were adopted from former section 12(d) of the Bankruptcy Act, where the court "was required to compare what creditors would receive under a composition offer with what they would receive in a liquidation of the estate." *Fleischmann & Devine, Inc. v. Wolfson Dry Goods Co., Inc.,* 299 F. 15 (5th Cir.1924). The best-interest test is explained in Chapter 11 cases such as *In re Victory Const. Co., Inc. (Victory IV),* 42 B.R. 145, 151 (Bankr.C.D.Cal.1984), where it states:

11 U.S.C. § 1129(a)(7) (1982) provides I must find that the plan is in the "best interest" of creditors. *See,* House Report No. 595, 95th Cong., 1st Sess. 412 (1977). Specifically, I must find each creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated.

*See, also, In re Downtown Inv. Club III,* 89 B.R. 59, 65 (9th Cir. BAP 1988), applying various other code provisions in order to arrive at the liquidation value. *Collier,* supra, ¶ 1225.02[4], p. 1225–8, states that "[I]n making the calculation, the court must take into account all of the Bankruptcy Code provisions that would be relevant if the debtor had filed under Chapter 7." *Collier* explains that the analysis must value all unencumbered, non-exempt property, and then deduct all costs likely to be incurred by the Chapter 7 Trustee in liquidating that property.

■ The plain language of § 1225(a)(4) dictates the answer. "The task of resolving the dispute—begins where all such inquiries must begin: with the language of statute itself." *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). "In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Id.* The use of the term "liquidated under Chapter 7" in § 1225(a)(4) has a precise meaning to all bankruptcy practitioners and courts. It simply means the Court, Debtor and creditors compare the payment under the plan to unsecured claims against a hypothetical liquidation of unencumbered non-exempt assets under Chapter 7.

■ At the outset, I must observe that the Debtor has computed the income tax liability from over-encumbered real property in order to reduce the amount of payments to unsecured creditors by the amount of the tax which would ostensibly arise from the hypothetical sale of the real estate. The present issue regarding § 554 would never have arisen if the Debtor used the proper liquidation standard to satisfy § 1225(a)(4). The proper standard is simply to compute the value of unencumbered, non-exempt assets. Absent special circum-

stances, such as those involved in *K.C. Machine & Tool Co.*, infra, the over-encumbered assets would not have provided any source of funds for payment on general unsecured claims. *In re Bremer*, 104 B.R. 999, 1008 (Bankr.W.D.Mo.1989) states in discussing the § 1225(a)(4) standard:

> In fact, any and all unsecured and unencumbered assets which are property of the estate should be included in the valuation as of the effective date [of the plan].
>
> \*　\*　\*　\*　\*　\*
>
> Therefore, the "best interest of creditors" analysis of Section 1225(a)(4) should include the liquidation value on the effective date of all unencumbered non-exempt property of the estate, including the estimated value of the crops and CRP payments.

And *see In re Rockefeller*, 100 B.R. 874, 878 (Bankr.E.D.Mich.1989) for application of the principle that the liquidation analysis should include only unencumbered, non-exempt assets, including real property with a value in excess of liens, exemptions and reasonably certain costs of Chapter 7 liquidation. It is this pool of assets available for a Chapter 7 Trustee, which satisfies the best interest test under § 1225(a)(4). On this ground alone, the hypothetical sale of over-encumbered assets in the Debtors' liquidation analysis is faulty, since the Debtors have not alleged or shown any exceptional circumstances under which such sale would be made under Chapter 7.

Since SBA has raised the issue regarding § 554, I deemed it necessary to discuss and decide such matter. In a case liquidated under Chapter 7, it is most clearly a problem in every case whether the Trustee should abandon over-encumbered assets. Indeed, *In re Eve*, 9 B.R. 312, 317–320 (Bankr.Mont.1990), discussing § 554, quotes approvingly from *In re K.C. Machine & Tool Co., Inc.*, 816 F.2d 238 (6th Cir.1987), which in turn recites from the dissent in *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). *Midlantic* states the: "judge-made rule of abandonment served the overriding purpose of bankruptcy liquidation: The expeditious reduction of the debtor's property to money, for equitable distribution to creditors." *Id.*, 106 S.Ct. at 763. The quote continues:

> "Forcing the trustee to administer burdensome property would contradict this purpose, slowing the administration of the estate and draining its assets." *Id.*

Prior to the 1978 Code, there was no statutory provision on abandonment. Section 554 incorporated the doctrine of abandonment into the statutory scheme. If abandonment must be invoked to eliminate draining of unencumbered, non-exempt assets from the tax consequences arising from the sale of over-encumbered assets in actual liquidation under Chapter 7, it should surely be invoked in the hypothetical liquidation required under § 1225(a)(4), so the best interest test is met for the unsecured creditors. As noted above, the tax saving to the estate upon abandonment is over $25,000, a sum which the estate would not bear under Chapter 7 liquidation, for to do so would defeat the very purpose of § 554 and § 1225(a)(4) as to the unsecured creditors. Indeed, *Olson*, supra, is a clear example of how abandonment of over-encumbered assets saved the estate over $34,000 in taxes.

There is additional case authority that § 554 must be employed in appropriate circumstances under § 1225(a)(4). The Chapter 7 Trustee has the duty to maximize the value of the estate, *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 353, 105 S.Ct. 1986, 1993, 85 L.Ed.2d 372 (1985). "In short, it is the Trustee's duty to both the debtor and the creditors to realize from the estate all that is possible for distribution among the creditors and to this end the Trustee may assert claims and collect assets even though, in many cases, the debtor would be estopped." 4 *Collier on Bankruptcy*, ¶ 704.02[3], p. 704.6 (5th Ed.). In explaining the case-formed bankruptcy law on abandonment as codified by § 554, Collier states "[T]his practice furthered the paramount purpose of bankruptcy liquidation; the reduction of the debtor's property to money as expeditiously as prac-

ticable so as to secure funds for distribution to general creditors. Forcing a Trustee to retain and administer property that was valueless or unprofitable is contrary to that purpose." 4 *Collier on Bankruptcy*, ¶ 554.01, p. 554–2 and 3 (15th Ed.). Clearly, then, if this case were liquidated under Chapter 7, the over-encumbered property of the Debtor may be subject to abandonment.

Finally, and without belaboring the obvious, *In re Paolella*, 79 B.R. 607 (Bankr. E.D.Pa.1987) places the matter of abandonment under § 554 in proper perspective in a Chapter 7 liquidation.

> Numerous courts have recognized that where the estate has no equity in a property, and the estate is to be liquidated, abandonment will virtually always be appropriate, because no unsecured creditor could benefit from its administration. *In re Cunningham*, 48 B.R. 509 (Bankr. M.D.Tenn.1985); *Matter of Karl A. Neise, Inc.*, 31 B.R. 409 (Bankr.S.D.Fla. 1983); *In re Anspach*, 13 B.R. 208 (Bankr.E.D.Pa.1981); *In re Brannan*, 5 B.R. 505 (D.V.I.1980). *See also In re Air Vermont, Inc.*, 41 B.R. 486 (Bankr. D.Vt.1984). *Id.* at 610.

The *Paolella* court also noted in a footnote, that in a reorganization case the estate may benefit from fully encumbered property, but such consideration is not relevant in a Chapter 7 liquidation. Also, recognizing that the moving party has the burden to make out a prima facie case for abandonment, *Brannan*, supra, that showing may be rebutted on the basis that the estate does have some equity in the property, including proof that secured claims are subordinated, or that abandonment would contravene state law designed to protect health and safety from identified hazards. *Air Vermont*, supra; *Midlantic Nat'l Bank*, supra; *K.C. Machine & Tool Co.*, supra. Consequently, I hold that to satisfy the hypothetical liquidation standard under § 1225(a)(4), the Court, the Debtor, and the creditors must consider whether § 554 would be invoked in liquidating the estate.

Considering that SBA would be the moving party for abandonment of the farm real estate under § 554, the Debtor must be given an opportunity to rebut the challenge inasmuch as this Court has now concluded that § 554 must be considered as an integral party of the liquidation analysis. The Debtor has not yet had such opportunity, so that a supplemental hearing on this issue is necessary to provide all parties their due process right to develop a complete record.

IT IS ORDERED a supplemental hearing on confirmation of the Chapter 12 Plan is set for Wednesday, March 18, 1992, at 10:00 o'clock a.m., Fifth Floor Courtroom, Federal Building, Billings, Montana.

IT IS FURTHER ORDERED the Debtor shall have until March 7, 1992, to amend the Chapter 12 Plan and liquidation in accordance with this Order.