**In re Lawrence PAOLELLA, Jr. Linda M. Paolella, Debtors.**

**In re Michael PAOLELLA and Georgette M. Paolella, Debtors.**

Bankruptcy Nos. 87–00124F, 87–00125F.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 13, 1987.

Jack K. Miller, Mitchell W. Miller, Miller and Miller, Philadelphia, Pa., for debtors, Lawrence Paolella, Jr., et ux., and Michael Paolello, et ux.

Kevin Walsh, Adelman Lavine Gold & Levin, Philadelphia, Pa., for Larry Waslow, objector.

Paul A. Patterson, White and Williams, Philadelphia, Pa., for Maryland Nat. Indus. Finance Corp., now known as MNC Commercial Corp.

Joseph Finlay, Philadelphia, Pa., trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Before me are identical motions in two chapter 7 bankruptcy cases by which the debtors seek to have me order the trustee to abandon property of the estate pursuant to 11 U.S.C. § 554(b). I find that they have met their burden as movants under section 554(b) to establish a prima facie case that the property "is burdensome ... or ... of inconsequential value and benefit to the estate", by establishing that the estate has no equity in the property. However, because the trustee may not have had an opportunity to fully investigate the estate's interest in the property so as to be able to rebut the debtors' case, I will set these motions down for a supplemental hearing in approximately thirty days to allow the trustee or any other party in interest an opportunity to establish that the estate holds some interest in the property which would rebut the debtors' prima facie case and preclude abandonment.

## I.

These motions come before me in a fairly unusual posture for disputes concerning abandonment. The movants here are the joint debtors in two chapter 7 cases.[1] They are seeking an order requiring the chapter 7 trustee administering their estates to abandon the properties which serve as their residences. They do so despite their

knowledge that abandonment will remove their residences from their estates so as to end the automatic stay which currently shields that property from creditors. 11 U.S.C. § 362(c)(1). *See, In re Purco*, 76 B.R. 523, 532 (Bankr.W.D.Pa.1987); *In re Beker Industries Corp.*, 64 B.R. 900 (Bankr.S.D.N.Y.1986).

The motions are opposed in each case by the chapter 7 trustee, by MNC Commercial Corporation ("MNC"), a major unsecured creditor, and by Larry Waslow ("Waslow"), the trustee in the involuntary chapter 7 bankruptcy of M. Paolella and Sons, Inc.,[2] a corporate entity of which Lawrence and Michael Paolella are apparently principals. The opposition of the chapter 7 trustee to these motions has been fairly nominal, but MNC and Waslow are vigorously opposed to abandonment. Waslow asserts that because the debtors guaranteed many of the corporate debts of M. Paolella & Sons, he is an interested party to these contested matters.[3]

At the hearing held on the motion to compel the trustee to abandon, the debtors presented evidence as to the value of the residences for which they seek abandonment and of the amount of a lien on the residence. According to the briefs of the parties, certain facts are not in dispute. The Lawrence and Linda Paolella residence apparently has a fair market value of approximately $110,000.00 subject to a judgment lien of R.J. Reynolds Tobacco Company, Inc. in the amount of $851,946.38. Similarly, the Michael and Georgette Paolella residence has a fair market value of approximately $225,000.00 subject to the same R.J. Reynolds lien.

In response, the parties opposing the motion did not present evidence. They did, however, elicit a statement from debtor's counsel that R.J. Reynolds had engaged in either pre-petition or post-petition discussions to compromise its claim.

---

1. Both Lawrence and Michael Paolella have filed joint petitions with their wives.

2. Bankr. No. 86–00495F, E.D.Pa.

3. The debtors do not appear to object to Waslow's participation.

From those facts, the debtors argue that they have established that the estate has no equity in their residences so that they are properly abandoned. The parties opposing respond that a compromise of the R.J. Reynolds claim could create equity which then could properly be distributed for the benefit of the estate.

## II.

11 U.S.C. § 554(b) provides:

On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

In dissent in *Midlantic National Bank v. New Jersey Dep't. of Environmental Protection,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), now Chief Justice Rehnquist outlined the purpose and history of abandonment:

Abandonment is "the release from the debtor's estate of property previously included in that estate" 2 W. Norton, Bankruptcy Law and Practice § 39.01 (1984), citing *Brown v. O'Keefe,* 300 U.S. 598, 602–603, 57 S.Ct. 543, 546–47, 81 L.Ed. 827 (1937). Prior to enactment of the Bankruptcy Code in 1978, there was no statutory provision specifically authorizing abandonment in liquidation cases. By analogy to the trustee's statutory power to reject executory contracts, courts had developed a rule permitting the trustee to abandon property that was worthless or not expected to sell for a price sufficiently in excess of encumbrances to offset the costs of administration. 4 L. King, Collier on Bankruptcy ¶ 554.01 (15th ed. 1985) (hereinafter Collier). This judge-made rule served the overriding purpose of bankruptcy liquidation: the expeditious reduction of the debtor's property to money, for equitable distribution to creditors, *Kothe v. R.C. Taylor Trust,* 280 U.S. 224, 227, 50 S.Ct. 142, 143, 74 L.Ed. 382 (1930). 4 Collier ¶ 554.01. Forcing the trustee to administer burdensome property would contra-

dict this purpose, slowing the administration of the estate and draining its assets.

The Bankruptcy Code expressly incorporates the power of abandonment into federal bankruptcy legislation for the first time.

106 S.Ct. at 763.

As to the specific purpose and history of section 554(b) which permits parties in interest other than the trustee to move for abandonment, the Sixth Circuit has recently stated:

In enacting § 554, Congress was aware of the claim that formerly some trustees took burdensome or valueless property into the estate and sold it in order to increase their commissions. Some of the early cases condemned this particular practice in no uncertain terms, and decried the practice of selling burdensome or valueless property simply to obtain a fund for their own administrative expenses. *See, e.g., Standard Brass Corp. v. Farmers National Bank,* 388 F.2d 86 (7th Cir.1967); *Miller v. Klein (In re Miller),* 95 F.2d 441 (7th Cir.1938); *Seaboard National Bank v. Rogers Milk Products Co.,* 21 F.2d 414 (2d Cir.1927). Congress then gave the courts the power to order the trustee to abandon property at the request of a party in interest if the property was burdensome or valueless and of no benefit to the estate. 11 U.S. C. § 554(b) (1986 Supp.).

*In re K.C. Machine & Tool Co.,* 816 F.2d 238, 246 (6th Cir.1987).

Thus, the principle of abandonment was developed by the courts to protect the bankruptcy estate from the various costs and burdens of having to administer property which could not conceivably benefit unsecured creditors of the estate. *Cf. In re Trowbridge,* 74 B.R. 484 (Bankr.E.D.Pa. 1987) (estate may be responsible for postpetition property taxes if property not abandoned).

## III.

Numerous courts have recognized that where the estate has no equity in a proper-

ty, and the estate is to be liquidated,[4] abandonment will virtually always be appropriate, because no unsecured creditor could benefit from its administration. *In re Cunningham,* 48 B.R. 509 (Bankr.M.D. Tenn.1985); *Matter of Karl A. Neise, Inc.,* 31 B.R. 409 (Bankr.S.D.Fla.1983); *In re Anspach,* 13 B.R. 208 (Bankr.E.D.Pa.1981); *In re Brannan,* 5 B.R. 505 (D.V.I.1980). *See also In re Air Vermont, Inc.,* 41 B.R. 486 (Bankr.D.Vt.1984).

■ These decisions make clear that proof that an estate lacks equity in property sets forth at least a prima facie case that the property is of inconsequential value and benefit to the estate. In a motion brought pursuant to section 554(b), it is the movant who must make out a prima facie case. *In re Brannan.* *See also Matter of National Smelting of New Jersey, Inc,* 49 B.R. 1012 (D.Colo.1985).

■ The movant's case can then be rebutted by evidence that the estate does have some equity in the property, including *inter alia* proof that the secured creditor's liens are or can be subordinated to an interest of the trustee. *Air Vermont; In re Kelly,* 21 B.R. 495 (Bankr.W.D.Va.1982). A party opposing abandonment might also establish some other form of value or benefit to the estate which would accrue to it by retention of the property. *See e.g., In re K.C. Machine & Tool Co.,* 816 F.2d 238 (6th Cir.1987) (no abandonment required where unsecured administrative claimants will receive distribution prior to secured creditors by operation of 11 U.S.C. § 724(b) after conversion). Additionally, a party might show that abandonment is not appropriate because it would contravene "a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Midlantic National Bank,* 106 S.Ct. at 762.

## IV.

In the contested matter before me, the parties agree that as of the date of the bankruptcy filings, the respective estates had no apparent equity in the debtors' residences because of the R.J. Reynolds judgment. As discussed above, this makes out a prima facie case in support of the debtors' motions.

Two parties other than the trustee respond, however, that equity might be created because R.J. Reynolds may compromise the amount of the judgment. They further intimate that the debtors and R.J. Reynolds might have reached a pre-petition agreement which they are unlawfully concealing from the court and the trustee and thus that equity in the residences may already exist. They reach this conclusion based on debtors' counsel's admission that discussions regarding compromise were held and on a reasoning process by which they conclude that the debtors would have no incentive to request abandonment unless they could develop equity in the abandoned property.[5] Neither Waslow nor MNC, however, put on evidence at the hearing of a consummated prepition compromise arrangement.

Waslow and MNC point out that there are several authorities which stand for the proposition that a bankruptcy trustee must have sufficient time to investigate assets of the estate before abandonment is ordered. *Stanolind Oil & Gas Co. v. Logan,* 92 F.2d 28 (5th Cir.1937) *cert. denied* 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592, 303 U.S. 636, 58 S.Ct. 522, 82 L.Ed. 1097 (1938); *Hill v. Larcon Co.,* 131 F.Supp. 469 (W.D.Ark. 1955). *See also,* L. King, *Collier on Bankruptcy,* ¶ 554.02[1] at 554–5, 6 (15th ed. 1987):

> Under prior case law ... the trustee had a "reasonable" time to consider retaining or abandoning an encumbered or otherwise not clearly beneficial asset. The

---

**4.** At least one court has recognized that where reorganization is contemplated, the estate might ultimately realize some benefit from the use of fully encumbered property. *See In re Beker Industries,* 64 B.R. 900 (Bankr.S.D.N.Y.1986). *See also* 11 U.S.C. § 362(d)(2). Such considerations are not relevant in a chapter 7 liquidation.

**5.** The debtors could not, of course, enter into any binding arrangement with the lien creditor during the pendency of the bankruptcy prior to abandonment. *See* 11 U.S.C. §§ 521, 541, 704.

term "reasonable" implies that the period of deliberation is adaptable to the circumstances. The trustee may wait until he is able to ascertain whether there is any profit to be expected for the estate. In fact, it is his duty to wait ...

The express extension by congress of the right to apply for abandonment to any party in interest in section 554(b) does not appear to conflict with this judicially developed requirement.

 I am not unmindful of the importance of allowing the trustee an adequate opportunity to investigate the value of the assets of the estate.[6] I further recognize that there is a special need for care in making a decision to dismantle portions of an estate by compelling abandonment because the abandonment decision is irrevocable. *In re Bryson*, 53 B.R. 3 (Bankr.M. D.Tenn.1985); *In re Enriquez*, 22 B.R. 934 (Bankr.D.Neb.1982).

The instant bankrupticies were filed on January 8, 1987 and the trustee accepted appointment on January 21, 1987. The debtors' initial motions for abandonment were filed on April 27, 1987 and were amended on May 8, 1987. The trustee (and other interested parties) in these cases have now had approximately nine months to investigate the assets of the estate. The trustee or other objecting parties should be prepared to come forward now with evidence, if any exists, to rebut the debtor's case.

At this juncture, I am prepared to grant the debtors' requests to order abandonment in both cases unless some party comes forward to establish that one or both estates have equity in the properties at issue[7] or can show some other benefit to the estates emerging from continued administration of these properties.[8]

For this reason, I will order that a supplemental hearing be scheduled in approximately thirty days to allow the objecting parties to present such evidence, if any. At that hearing, the burden of persuasion shall be upon the objecting parties. If that burden is not met, the relief requested by the debtors shall be granted.

An appropriate order shall be entered.

---

**6.** If the trustee discovers that a secured creditor will accept a compromise of its claim, the trustee may seek to enter into such a compromise if the result would be to benefit the estate. *See* 11 U.S.C. § 704.

**7.** Merely showing that a compromise between the creditors and Reynolds is contemplated will not necessarily satisfy this burden, because nothing prohibits the debtors from proceeding as they see fit after abandonment so long as they do not impermissibly utilize estate property. I note that the objectors can also seek to deal with R.J. Reynolds either before or after abandonment to obtain assignment of the judgment.

**8.** I thus reject MNC's contention based on *In re Janmar*, 4 B.R. 4 (Bankr.N.D.Ga.1979) that abandonment may never be ordered unless the trustee consents.