**In re M. PAOLELLA & SONS, INC., Debtor.**

**The AMERICAN CIGAR COMPANY, the American Tobacco Company, Lorillard, Inc.; Philip Morris Incorporated; and R.J. Reynolds Tobacco Company, Plaintiffs,**

**v.**

**MNC COMMERCIAL CORP., Maryland National Bank, and Larry Waslow, Trustee, Defendants.**

Bankruptcy No. 86–00495F.

Adv. No. 87–1007F.

United States Bankruptcy Court, E.D. Pennsylvania.

May 11, 1988.

Arthur E. Newbold, Kathleen Milsark, Jennifer M. Anderson, Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiffs, The American Cigar Co., Lorillard, Inc., The American Tobacco Co., Philip Morris, Inc., and R.J. Reynolds Tobacco Co.

Richard M. Jordan, Jack B. Justice, Paul A. Patterson, White and Williams, Philadelphia, Pa., for defendants, MNC Commercial Corp. and Maryland Nat. Bank.

Kevin Walsh, Adelman Lavine Gold & Levin, Philadelphia, Pa., for defendant/trustee, Larry Waslow.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Plaintiffs in this adversary proceeding have filed a five count complaint against three defendants, one of whom is the trustee. Two of the defendants, MNC Commercial Corporation and Maryland National Bank have filed a joint motion to dismiss, pursuant to Bankr.Rule 7012(b), raising questions concerning subject matter jurisdiction as well as standing. This motion has been thoroughly briefed and argued and, for the reasons set forth below, must now be denied.

### I.

In considering this motion to dismiss, plaintiffs' factual allegations set out in their complaint are accepted as true, solely for the purpose of deciding this motion. *See Ingersoll–Rand Financial Corp. v. Callison*, 844 F.2d 133 (3d Cir.1988); *D.P. Enterprises, Inc. v. Bucks County Community College*, 725 F.2d 943 (3d Cir.1984);

*In re Stephen W. Grosse, P.C.*, 68 B.R. 847 (Bankr.E.D.Pa.1987).

Those facts are as follows:

The debtor, M. Paollela & Sons, Inc., was, for many years, a large wholesaler of cigarettes, cigars and candy. The plaintiff tobacco companies sold tobacco products to the debtor on credit—although plaintiffs limited the amount of credit allowed. Financing for the debtor's operation came from defendant MNC; in return, MNC took a security interest in all of the debtor's assets, including inventory and accounts receivable. Financing was obtained pursuant to a lending formula which was based upon a percentage of outstanding accounts receivable and inventory. Formula compliance was monitored, *inter alia*, by the debtors sending daily business reports to MNC and by the debtor's depositing the proceeds of sales into a bank account controlled by MNC. (MNC also conducted inventory audits.) The debtor would obtain operating funds through a checking account at defendant Maryland National Bank into which MNC would deposit loan funds.

Plaintiffs allege that they had a practice of informing customers, such as the debtor, of upcoming price increases and of raising their credit limits so that wholesalers could purchase greater amounts of inventory at the pre-increase price. On January 1, 1983 there was to be such a price increase. MNC allowed the debtor to participate in buying more than their normal amount of inventory from plaintiffs even though the debtor would be exceeding the formula prescribed borrowing limits. Plaintiffs allege that MNC permitted the debtor to be continuously "out of formula" beginning approximately January 1983 (rather than modifying the formula) in order to insure that the debtor was in perpetual loan default.

Sometime in 1985, the debtor decided to liquidate all of its assets outside of bankruptcy. The process was to be orderly with all creditors paid and MNC was informed of this decision and indeed received the proceeds from the sale of various subsidiaries of the debtor. The debtor though

was still operating. In December 1985, the debtor was informed of another tobacco price increase and of its right to purchase above normal amounts of tobacco products from plaintiffs prior to the implementation of this increase. Plaintiffs aver that MNC agreed to allow the debtor to make higher than normal inventory purchases and agreed to provide funds for payment.

In January 1986, MNC began a detailed physical audit of the debtor's inventory. Sometime during January 1986, defendant Maryland National informed various plaintiffs that it would continue to honor checks written by the debtor. Subsequently, plaintiffs shipped more inventory to the debtor; however, the checks were not honored. On January 30, 1986, MNC declared the debtor to be in loan default and seized all of its assets. On January 31, 1986, plaintiffs filed an involuntary chapter 7 petition against the debtor, and an order for relief was entered. Since this involuntary filing, all of the debtor's business assets have been liquidated. MNC, which claims to be a secured creditor owed in excess of $11 million, has received $6,606,-678.37 from the sale proceeds. Unsecured creditors, such as plaintiffs, have received no distribution and, (absent this litigation and litigation brought by the trustee), are highly unlikely to receive any funds under 11 U.S.C. § 726.

## II.

In order to resolve this motion to dismiss, it is necessary to review the various claims contained in the complaint. Counts I and II involve claims of equitable subordination under 11 U.S.C. § 510(c). The first count is brought by plaintiffs Lorillard, Philip Morris, and Reynolds against defendant MNC and the trustee. The second count is brought by plaintiffs American Cigar and American Tobacco against the same two defendants. Oversimplifying slightly, both counts contend that defendant MNC embarked upon a studied plan to reduce the debtor's prepetition obligation to it at the expense of the plaintiffs. It is alleged that MNC deliberately allowed the plaintiffs to ship inventory to the debtor knowing that it would not advance funds to pay for such inventory and with the intention of seizing the inflated inventory pursuant to its security agreement. Plaintiffs believe that if they prove these allegations, MNC's secured claim must be subordinated to their unsecured claims pursuant to 11 U.S.C. § 510(c).

The trustee, of course, was not a party to any of this prepetition conduct, but is named as a defendant solely because the plaintiffs seek to recover from MNC the full amount of their unsecured claims. They request that this sum be paid to the trustee who would then be directed to pay the plaintiffs. In sum, the relief sought would subordinate MNC's secured claim to plaintiffs claims only, but leave MNC with a secured claim entitled by virtue of 11 U.S.C. § 725 to payment prior to unsecured creditors other than plaintiffs.[1]

Counts III and IV are brought by some plaintiffs against either MNC and Maryland Bank or against the Bank alone and are based solely upon a common law cause of action for misrepresentation. Plaintiffs in these counts contend that the defendant(s) intentionally misstated both the debtor's financial condition as well as defendant's own willingness to fund the debtor's purchases and honor the debtor's checks. Count V is brought by all plaintiffs against the trustee and MNC seeking reclamation under 11 U.S.C. § 546(c).

In reviewing defendant's motion to dismiss as to all counts for lack of subject matter jurisdiction, I note a common premise underlying the motion. Defendants view this dispute as solely involving creditors of the estate, in which the trustee is a nominal party, concerning funds already distributed to MNC and which involve causes of action based upon state law. In defendant's view, the outcome of this proceeding will have no affect upon this estate, can be completely resolved in a non-bankruptcy forum and so should be dismissed. My basis for denying the motion

---

1. The trustee has his own ideas about the appropriate manner of applying § 510(c) which differs from that of the plaintiffs. This will be discussed below.

stems from my conclusion that defendants are both misapplying and overlooking certain jurisdictional principles.

### III.

■ Bankruptcy proceedings may now be grouped into three categories:

(1) core proceedings, which may be heard and resolved by the bankruptcy court, *see* 28 U.S.C. § 157(b)(1); (2) noncore, related proceedings, which the bankruptcy court may hear and submit proposed findings of fact and conclusions to the district court, *see* 28 U.S.C. § 157(c)(1); and (3) noncore, unrelated proceedings, over which the bankruptcy court lacks any jurisdiction.

*In re Malone*, 74 B.R. 315, 318 (Bankr.E.D. Pa.1987) *recommendation approved* C.A. 86–361 (E.D.Pa. September 30, 1987). *Accord e.g., In re Globe Parcel Service, Inc.*, 71 B.R. 323 (E.D.Pa.1987); *In re Bowling Green Truss, Inc.*, 53 B.R. 391 (Bankr.W. D.Ky.1985). While defendants argue that counts I, II, and V are noncore, unrelated claims, they have cited no decisions supporting this view. To the contrary, there are a number of reported cases holding that proceedings brought pursuant to 11 U.S.C. § 510(c) and § 546(c) are not merely related but are core proceedings. *In re Osborne*, 42 B.R. 988, 993 (W.D.Wis.1984) (subordination is core); *In re Wheeling–Pittsburgh Steel Corp.*, 74 B.R. 656, 658 (Bankr.W.D.Pa.1987) (reclamation is core); *In re Atlas Fire Apparatus, Inc.*, 56 B.R. 927, 934 (Bankr.E.D.N.C.1986) (subordination); *In re Western World Funding, Inc.*, 52 B.R. 743, 762 (Bankr.D.Nev.1985) (subordination). *See also* 1 *Collier on Bankruptcy* ¶ 3.01, at 3–37 (15th ed. 1987) (subordination is core). Such a conclusion, that these counts are core matters, is supportable by two disparate approaches.

Although 28 U.S.C. § 157(b)(2) does not expressly mention either equitable subordination or reclamation among its list of core proceedings, this list was never intended by Congress to be exclusive. *See* 1 *Collier* ¶ 3.01 at 3–36. Both equitable subordination and reclamation proceedings establish the respective rights of creditors to participate in the distribution of the estate. Resolution of these matters affects both the size as well as the priority of claims. Thus, a court may easily conclude that proceedings under 11 U.S.C. §§ 510(c), 546(c) fall within the catch-all provisions of 28 U.S.C. § 157(b)(2)(A), (O) without expanding those provisions beyond constitutional recognition. *See In re Osborne; In re Western World Funding, Inc.*

A second approach responds directly to defendants' incorrect premise that counts I, II, and V are based solely upon state law and thus cannot be core matters.[2] In *In re Mankin*, 823 F.2d 1296 (9th Cir.1987) *cert. denied* —— U.S. ——, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988), the Ninth Circuit Court of Appeals held that a proceeding brought by a trustee pursuant to 11 U.S.C. § 544(b) was a core proceeding even though the trustee was bringing, in essence, a state fraudulent conveyance action. *Accord In re Harbour*, 840 F.2d 1165 (4th Cir.1988). The Ninth Circuit concluded that those proceedings which formerly, before the passage of 28 U.S.C. § 157(b)(2), would have been classifed as "arising under title 11", *see* 28 U.S.C. § 1334(b) (and former 28 U.S.C. § 1471(b)), are core proceedings.

The phrase 'arising under' has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. § 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11.

---

**2.** 28 U.S.C. § 157(b)(3) partly addresses this contention as well: "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law." *Accord e.g., In re Mankin* at 1301–02.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 445 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6401. Since the equitable subordination and reclamation counts are based upon express code provisions, they are claims "arising under title 11". *See also In re Monroe Well Service, Inc.,* 67 B.R. 746, 753–54 (Bankr.E.D.Pa.1986) *aff'd* C.A. # 86–3656, 3867, 4335 (E.D.Pa. April 15, 1987) (injunction under 11 U.S.C. § 105(a) is a core proceeding).

*Mankin* instructs that even though a bankruptcy provision borrows or incorporates state law principles, such incorporation does not make a proceeding based upon such provision noncore:

> Thus even though the right here initially arises from state law, because it pertains to a debtor under the protection of the federal bankruptcy laws, the right is as dependent for its existence on federal law as it is on state law. Indeed the right that is at issue here belongs to the trustee pursuant to federal law, not to a specific creditor under state law.
>
> . . . .
>
> When, on the other hand, Congress utilizes state law for federal purposes, the paramount concern is federal, not state, policy, even though Congress has chosen state law as a guideline for effectuating federal policy. As a consequence, when Congress utilizes a state law right for the purpose of effectuating federal policy, there is no reason why it should not be allowed at least some of the additional discretion in determining the manner in which the right is adjudicated that it is allowed with respect to "purely" federal rights.

*In re Mankin,* 823 F.2d at 1308–09.

As the Court of Appeals recognized, this analysis draws broad support from the legislative history surrounding the passage of 28 U.S.C. § 157.

> State law rights arising in core bankruptcy proceedings are functionally equivalent to congressionally created rights, because Congress has the power to modify State law rights in bankruptcy proceed-

ings. . . . Indeed, the very purpose of bankruptcy is to modify the rights of the debtors and creditors and the bankruptcy code authorizes the bankruptcy court to abrogate or modify State-created rights in many ways.

130 *Cong.Rec.* H1110 (daily ed. March 20, 1984) (statement of Rep. Kastenmeier).

Therefore, the fact that equitable subordination or reclamation matters may be brought in a nonbankruptcy forum does not deprive this court of jurisdiction to hear such claims. Although derived from state law, they are federal claims entitled to "summary" bankruptcy jurisdiction. *In re Mankin.*

### IV.

As I noted earlier, the instant motion focuses upon the structure of this litigation in that this dispute involves only creditors of the debtor with the trustee a nominal defendant as to three counts only. While it is certainly true that some disputes between creditors may have no affect upon the administration of a bankruptcy case so as to be beyond the scope of court jurisdiction, *see e.g. Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984); *In re Malone; In re Haug,* 19 B.R. 223 (Bankr.D.Ore. 1982), it does not follow that all disputes to which neither the trustee nor the debtor is a party cannot be heard by a bankruptcy court. *See In re Hilyard Drilling Co., Inc.,* 840 F.2d 596 (8th Cir.1988) (priority dispute between lienholders); *In re McKeesport Steel Castings Co.,* 799 F.2d 91 (3d Cir.1986) (contested matter under § 506(c) between unsecured creditor and secured creditor). *Accord, In re Zachman Homes, Inc.,* 83 B.R. 633 (Bankr.D.Minn. 1985). Whether jurisdiction lies depends upon the potential effect the outcome of the proceeding may have upon the bankruptcy case, *Pacor, Inc. v. Higgins,* regardless of the identity of the parties—although the absence of the debtor or trustee as a party may be important in analyzing the relationship of the proceeding to the administration of the bankruptcy case.

■ The Seventh Circuit Court of Appeals just recently articulated a central purpose of bankruptcy administration:

> The principal function of bankruptcy law is to determine and implement in a single collective proceeding the entitlements of all concerned.

*Matter of American Reserve Corp.,* 840 F.2d 487, 489 (7th Cir.1988). Viewed from this perspective, determinations under §§ 510(c) and 546(c) fall within the scope of this "principal function"; and neither provision limits its exercise to the trustee or the debtor in possession.[3] Thus, suits under § 510(c) brought by one creditor against another are not uncommon. *See In re Osborne; In re Pacific Express, Inc.,* 55 B.R. 913 (Bankr.E.D.Cal.1985) *rev'd. on other grounds* 69 B.R. 112 (9th Cir.BAP 1986) (suit by creditors' committee); *In re Just For The Fun of It of Tennessee, Inc.,* 7 B.R. 166 (Bankr.E.D.Tenn.1980). Moreover, given the purpose and language of § 546(c), such suits will generally be initiated by creditors. *See Matter of Marin Motor Oil, Inc.,* 740 F.2d 220 (3d Cir.1984).

Therefore, I do not view the evidence that the trustee is a nominal defendant to counts I, II, and V as warranting dismissal.

### V.

■ Similarly, I will not dismiss these three counts because the trustee may have already distributed funds, which plaintiffs now wish to recover, to MNC.[4] Again, MNC offers no decision directly supporting this contention; rather it refers to cases which hold that disputes concerning property abandoned under 11 U.S.C. § 554 may have no affect upon the administration of a bankruptcy case and, consequently, are outside court jurisdiction. *In re Xonics, Inc.,* 813 F.2d 127, 132 (7th Cir.1987). *See also In re Paollela,* 79 B.R. 607 (Bankr.E. D.Pa.1987). Similarly, MNC cites cases regarding property which was never part of the debtor's estate, as defined by 11 U.S.C. § 541(a). *See In re Kubly,* 818 F.2d 643, 645 (7th Cir.1987); *First State Bank & Trust Co. v. Sand Springs State Bank,* 528 F.2d 350 (10th Cir.1976). Here, however, the estate does have an interest in proceeds of property of the estate, whether or not they are fully encumbered. *In re Zachman Homes, Inc.* Moreover, any distribution made to MNC would likely be interim and recoverable by the trustee, if MNC is shown to have received a sum greater than that to which it was entitled.[5] *Cf. In re Wabash Valley Power Ass'n Inc.,* 69 B.R. 471 (Bankr.S.D.Ind.1987); *In re American International Airways, Inc.,* 47 B.R. 716 (Bankr.E.D.Pa.1985) (interim fees awarded pursuant to 11 U.S.C. 331 are refundable to the estate if it becomes necessary to pro rate administrative expenses).

In addition to the general power of the trustee to recover interim distributions, the plaintiffs in the instant proceeding have also alleged that any distribution to MNC was made subject to a reservation of rights in favor of creditors and the trustee. (Plaintiff's complaint ¶ 60, Plaintiff's brief, at 11). Since the tobacco products in the debtor's inventory were perishable, it was important that they be liquidated promptly to avoid significant diminution in value. MNC received the proceeds from such sales in deference to their secured claim. However, such payments do not insulate MNC from subsequent challenges to its claim during the pendency of the bankruptcy case unless the parties in interest have so agreed. Here, it is alleged that no such agreement exists. As a result, my jurisdiction to resolve these challenges is unaffected.

### VI.

■ A closer jurisdictional question concerns counts III and IV, which are common

---

3. Even if these rights were so limited, a creditor may sometimes act where the trustee refuses to do so. *In re McKeesport Steel Castings Co.*

4. Defendants' argument is akin to the pre-code dispute involving summary/plenary jurisdiction, which the passage of the Bankruptcy Code sought to end. *See In re Monroe Well Service, Inc.,* 67 B.R. at 753.

5. I have no evidence before me as to how or why the trustee made a distribution to MNC prior to final distribution. I assume, however, that disposition was made pursuant to 11 U.S.C. § 725.

law damage claims for misrepresentation, to which the trustee has not been named, even as a nominal defendant. Plaintiffs concede that their claims are at best related proceedings, and not core. Plaintiff's brief, at 18–19. Defendants argue that as state law claims between creditors, they are not even related to this bankruptcy case.

I recognize that the factual predicates of these counts are but subsets of the allegations made concerning equitable subordination. *See also In re Osborne,* 42 B.R. at 1000 (misrepresentations yield subordination). Indeed, the damages requested by counts III and IV are included in the relief sought under counts I and II. Yet this commonality of operative facts does not, by itself, serve as a source of jurisdiction:

> ... [T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b). Judicial economy itself does not justify federal jurisdiction.

*Pacor, Inc. v. Higgins,* 743 F.2d at 994.

■ Nonetheless, I am forced to agree with plaintiffs that the outcome of the dispute concerning counts III and IV "could conceivably have [an] effect" on this debtor's estate. *Pacor, Inc. v. Higgins,* 743 F.2d at 994.

If plaintiffs prevail on counts III and IV their unsecured claims against the estate will be reduced to the extent damages are recovered. Of course, to the extent that defendants must pay plaintiffs damages, they are likely to argue that their claims must be increased by the same amount. This is a chapter 7 case, not one under chapter 11, so that the size of a creditor's claim would have no affect upon administration of the estate by virtue of plan voting. *Compare In re Guy L. Long, Inc.,* 74 B.R. 939, 942 (Bankr.E.D.Pa.1987). Therefore, were I convinced that unsecured creditors would receive no distribution from the estate, I would agree with defendants that a dispute between unsecured creditors in a

chapter 7 case,[6] especially one which would leave the total of unsecured claims intact, would have no affect upon the administration of this bankruptcy case and would be "unrelated". *In re Malone.*

However, defendants overlook the potential impact of the trustee's adversary proceeding. That lawsuit, brought against defendants MNC and Maryland National Bank, alleges many of the same facts as the instant proceeding. In count VI of the trustee's complaint, the trustee seeks to subordinate the claim of MNC to all unsecured creditors and to recover all funds already paid to MNC. Were the trustee to succeed in his § 510(c) action, there would be funds payable to all unsecured creditors except, perhaps, MNC, because MNC would have the lowest priority claim. In addition, the reduction of plaintiff's claim against the estate, (even with an increase in MNC's claim) would yield a greater distribution to other unsecured creditors. Thus, when the potential results of counts III and IV are veiwed in connection with the potential relief requested by the trustee, I cannot conclude that resolution of counts III and IV could have no conceivable effect upon the estate. *See generally Matter of Xonics, Inc.,* 813 F.2d at 132; 1 *Collier on Bankruptcy* ¶ 3.01[iv] at 3–25 (15th ed. 1987).

Somewhat reluctantly, I conclude that counts I, II, and V are core proceedings while counts III and IV are related proceedings. Unless the parties consent, pursuant to 28 U.S.C. § 157(c)(2), I shall make only proposed findings and legal conclusions concerning the two related counts. Since the facts alleged in counts III and IV are similar to those alleged in counts I and II, identical findings may be reviewed by the district court in accordance with two very different standards. This anomaly has occurred previously, *see In re Athos Steel and Aluminum Co.,* 71 B.R. 525 (Bankr.E.D.Pa.1987), and is an interesting biproduct of 28 U.S.C. § 157. Whether or not section 157 is "any way to run a busy railroad", Countryman, *The Bankruptcy*

---

6. To the extent MNC has a secured claim which cannot be paid because of insufficient collateral, it holds an unsecured claim. 11 U.S.C. § 506(a).

*Judges: Jurisdiction by Neglect,* 92 Comm.L.J. 1, 17 (1988), it is the method, for want of an alternative, which I am required to employ.

## VII.

■ The last issue raised by defendants concerns plaintiffs' standing to seek equitable subordination under § 510(c) in light of the trustee's subsequent suit also seeking equitable subordination. Defendants refer to *In re Ludwig Honold Manufacturing Co.,* 30 B.R. 790 (Bankr.E.D.Pa. 1983) for the proposition that a creditor cannot initiate an equitable subordination proceeding where the trustee has already done so. Plaintiffs counter that nothing in § 510(c) limits relief to the trustee and, even were it expressly so limited, the *Ludwig Honold* holding has been affected by the more recent Third Circuit decision of *In re McKeesport Steel Casting Co. See also In re Morrison,* 69 B.R. 586, 589 (Bankr.E. D.Pa.1987) (*McKeesport* may undermine *Ludwig Honold* ).

The holding of *Ludwig Honold* was succinctly stated by that court:

> We conclude that because the trustee has filed an equitable subordination complaint against the creditor in question requesting relief similar to that prayed for by the general creditor in all counts of its amended complaint, the general creditor lacks standing to maintain a similar action and, therefore, its complaint will be dismissed.

*Ludwig Honold* at 791.

Its premise, though, that the trustee and unsecured creditors were seeking similar relief is not applicable to the instant matter. Although both the trustee and the plaintiff based their claims upon § 510(c), the relief sought by each complaint is quite different. The trustee seeks to subordinate the MNC claim to all unsecured claims contending that all creditors have been harmed by MNC; plaintiff seeks to elevate their claims above that of MNC with MNC's claim remaining ahead of other unsecured claims. If the plaintiffs prevail, only they would benefit from the subordination, which would explain the trustee's

lack of interest in bringing such a suit. If the trustee prevails, all unsecured creditors, including but not limited to plaintiffs, would benefit, but plaintiffs would benefit to a lesser degree because they would be forced to share the estate equally with other creditors.

Defendants have sought dismissal of plaintiffs' proceeding only for lack of subject matter juridiction and so I have refrained from discussing the elements of a cause of action under § 510(c). *See generally Matter of Mobile Steel Co.,* 563 F.2d 692, 699–700 (5th Cir.1977). I did note previously that defendants have not referred to any decision which limits the relief provided by § 510(c) to only the trustee. Certainly there are cases to the contrary and such decisions have permitted the relief sought by plaintiffs—i.e. a creditor's claim is subordinated only to that of a particular creditor. *E.g. In re Osborne,* 42 B.R. at 1000 ("... PCA claim should be subordinated to that of [creditor] only...."). *But see In re Parker Montana Co.,* 47 B.R. 419, 421 (D.Mont.1985). Therefore, assuming that it was appropriate for plaintiffs to seek equitable subordination for themselves alone, defendant's standing argument, if accepted, would divest plaintiffs of that right whenever the trustee seeks broader, but different, relief under § 510(c).

It is difficult to construe the holdings of *Ludwig Honold* or *Fred Reuping Leather Company v. Fort Greene National Bank,* 102 F.2d 372 (3d Cir.1939), (upon which *Ludwig Honold* was based), as supporting defendants' position. Both decisions are premised upon the trustee's duty to act for all unsecured creditors and of the trustee's right to request the same relief the creditor seeks. *Cf. Flip Mortgage Co. v. McElhone,* 841 F.2d 531, 539 (4th Cir.1988) (trustee should bring § 544(b) proceeding, not creditor). Neither premise gives the trustee the power to divest a creditor of a remedy provided by the bankruptcy code which is unique to that creditor.

Therefore, since there has been no challenge to plaintiffs' right to seek relief unique to themselves, (only a challenge to

the jurisdiction of this court to hear it), they have standing to press their claims even though the trustee seeks somewhat contradictory relief albeit based upon the same statutory provision. Such a conclusion satisfies the trustee who argued against dismissing the plaintiffs' equitable subordination counts. The trustee apparently hopes to have his proceeding tried jointly with plaintiffs', ride their coattails and then defeat their request for relief. Whether his hopes will be realized is yet to be determined. However, I do conclude that there is no basis to dismiss any count of this complaint.

An appropriate order shall be entered.