**In re Lawrence PAOLELLA, Jr., Linda M. Paolella, Debtors.**

**In re Michael PAOLELLA and Georgette M. Paolella, Debtors.**

**Bankruptcy Nos. 87–00124F, 87–00125F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

May 12, 1988.

As Amended May 18, 1988.

Jack K. Miller, Mitchell W. Miller, Miller and Miller, Philadelphia, Pa., for the debtors, Lawrence Paolella, Jr., et ux. and Michael Paolello, et ux.

Kevin Walsh, Adelman Lavine Gold & Levin, Philadelphia, Pa., for Larry Waslow, objector.

Paul A. Patterson, White and Williams, Philadelphia, Pa., for Maryland Nat. Indus. Finance Corp., now known as MNC Commercial Corp.

Joseph Finlay, Pincus, Verlin, Hahn & Reich, Philadelphia, Pa., trustee/objector.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

This dispute involves the debtors' requests for orders pursuant to 11 U.S.C. § 554 requiring the trustee to abandon the properties which serve as their residences.[1] The debtors claim that their respective estates have no equity in the properties, so that continued administration will be "burdensome to the estate" or "of inconsequential value and benefit to the estate". The

1. Identical motions involving virtually identical issues were filed by the debtors in two Chapter 7 cases. The husband/debtor in each case are brothers. The two motions will be treated together in this memorandum opinion.

trustee and a creditor have responded claiming that postpetition equity was created which, upon liquidation, will benefit the estate.

I have previously considered the issues involved here in a memorandum opinion reported at *In re Paolella,* 79 B.R. 607 (Bankr.E.D.Pa.1987). In that memorandum opinion, I concluded that the debtors' evidence that the face value of a judgment lien exceeds the value of the properties makes out a prima facie case for abandonment, because absent equity, it is unlikely that property can have value or benefit to an estate being liquidated in Chapter 7. However, based on the longstanding policy by which trustees must be accorded an adequate opportunity to investigate potential assets of the estate, I scheduled a supplemental hearing to allow the trustee in these cases to discover and present evidence to rebut the debtors' prima facie case.

In presenting his evidence, the trustee has raised issues which go to the foundation of the system which Congress has established for the administration of an estate in bankruptcy. I am asked to determine *inter alia* whether potential equity in property created postpetition, but before the property is liquidated or abandoned, constitutes property of the estate.

Based on the evidence presented at the two hearings in this matter, I make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The Chapter 7 bankruptcy of Lawrence and Linda Paolella ("L & L Paolella") was filed on January 8, 1987. At the time of filing, L & L Paolella owned a residence, valued at $110,000 subject to a judgment lien of R.J. Reynolds Tabacco Company,

Inc. ("R.J. Reynolds") in the amount of $851,946.38. *See Paolella,* 79 B.R. at 608.

2. The Chapter 7 bankruptcy of Michael and Georgette Paolella ("M & G Paolella") was also filed on January 8, 1987. At the time of filing, M & G Paolella owned a residence, valued at $225,000 subject to the same R.J. Reynolds' lien. *Id.*

3. Joseph Finlay, Esquire, was appointed interim trustee on January 8, 1987 in each case and accepted his appointment on January 20, 1987. Mr. Finlay has continued as trustee since the conclusion of the meeting of creditors on April 16, 1987.

4. MNC Commercial Corp. ("MNC") filed a proof of claim in each bankruptcy on April 24, 1987 in the unsecured amount of $4,755,442.50.[2]

5. At the time of filing, the debtors had no equity in their respective residences.

6. Prior to filing bankruptcy, the debtors had received an offer from R.J. Reynolds by which R.J. Reynolds would agree to satisfy its judgment in return for payment of $100,000. At the time of filing, this offer remained open. The offer was not disclosed by the debtors in their bankruptcy petition or schedules, but was admitted by the debtors at the January 27, 1988 supplemental hearing on this motion. (*See* Debtors' Proposed Findings of Fact, Conclusions of Law at Finding Paragraph 4.) However the trustee has been aware of the debtors' negotiations with R.J. Reynolds at least since the June 4, 1987 hearing.

7. By letter from debtors' counsel to R.J. Reynolds, postpetition, the debtors accepted Reynolds' offer and agreed to pay Reynolds the sum of $100,000.

8. The debtors were unable to raise the $100,000 payment and consequently failed to perform under the agreement with Reynolds.

---

**2.** MNC has vigorously opposed abandonment as has Larry Waslow, the trustee in the involuntary Chapter 7 case filed against M. Paolella and Sons, a corporate entity of which Lawrence and Michael Paolella are principals. *See Paolella,* 79 B.R. at 608. Mr. Finlay, MNC and Mr. Waslow all participated in the supplemental hearing held on January 27, 1988. Only Mr. Finlay and

MNC have made post-trial submissions. The existence of the instant dispute may not be totally unrelated to the dispute between MNC, R.J. Reynolds, Mr. Waslow and others in an involuntary proceeding involving M. Paolella and Sons. *See In re M. Paolella & Sons,* 85 B.R. 965 (Bankr.E.D.Pa.1988).

9. Subsequently, the debtors continued to negotiate with R.J. Reynolds. Upon learning of R.J. Reynolds' continued willingness to sell the judgment for $125,000, they contacted various friends and relatives to ask that they purchase the judgment.

10. In early May 1987, the following entities (collectively "the purchasers") pooled $125,000:

| | |
|---|---|
| Vincent Carocella | $50,000 |
| Robert Cato & Associates | $25,000 |
| Lucette Spor | $20,000 |
| Joseph Melvin | $15,000 |
| Earnest Spor | $10,000 |
| Anthony Rescigno | $ 5,000 |

11. Vincent Carocella is a personal friend and current employer of Michael Paolella. (N.T. 1/27/88 at pp. 22, 29).

12. Robert Cato is a personal friend of Lawrence Paolella. (N.T. 1/27/88 at pp. 46–47).

13. Lucette Spor is Georgette Paolella's sister. (N.T. 1/27/88 p. 22).

14. Joseph Melvin is a personal friend and former employee of Michael and Lawrence Paolella. (N.T. 1/27/88 pp. 22, 27–28, 47).

15. Earnest Spor is Georgette Paolella's father. (N.T. 1/27/88 p. 22).

16. Anthony Rescigno is a friend and former employee of Michael and Lawrence Paolella. (N.T. 1/27/88 pp. 22, 28, 47).

17. The six entities placed the $125,000 in escrow with John Curtin, Esquire, attorney for Mr. Cato.

18. On or about May 2, 1987, Mr. Curtin used the $125,000 to purchase the judgment from R.J. Reynolds. (exhibit T–1). On or about May 18, 1987, R.J. Reynolds executed an irrevocable assignment of the judgment to Philips, Curtin & DiGiacomo as escrow agent. *Id.* By agreement, Mr. Curtin is currently holding the judgment in escrow for the six purchasers. *Id.*

19. Both Michael and Lawrence Paolella testified that they have no present agreement to buy the judgment from the purchasers either by paying them the full amount of the judgment or by repaying the $125,000 used to purchase it. (N.T.

1/27/88 pp. 30–32, 49–50). They further testified that they have no arrangement which would preclude the purchasers from executing upon the judgment lien. *Id.*

20. Both Michael and Lawrence testified that their expectation is that the purchasers will accept repayment of the $125,000 with attorneys' fees and interest in full satisfaction of the judgment. *Id.* They base this expectation on the fact that the purchasers are friends and relatives. *Id.*

21. Of the group of purchasers, only Lucette Spor testified. She testified that she expected only return of her $20,000 plus an indeterminate amount of interest. (N.T. 1/27/88 p. 61).

22. On or about January 21, 1988, the trustee, Mr. Finlay, filed complaints in both Paolella bankruptcy cases objecting to the secured claim of Philips, Curtin & DiGiacomo as escrow agent and seeking to equitably limit the secured claim of the purchasers to the sum of $125,000. (exhibit T–2).

## CONCLUSIONS OF LAW

1. Postpetition appreciation in the value of property, except to the extent of the debtor's potential exemption rights pursuant to 11 U.S.C. § 522, accrues for the benefit of the trustee until the property is liquidated or abandoned. 11 U.S.C. § 541(a)(6).

2. Here, a postpetition transaction may have created non-exempt equity in one or both Paolella properties if the trustee succeeds in his actions to limit the secured claim of the purchasers to the value which they paid for the judgment (i.e. $125,000).

3. By evidence that the debtors and at least one purchaser of the judgment expect that the judgment lien can be satisfied by repayment of $125,000 with interest, the trustee has demonstrated that there is a reasonable probability he will prevail on the merits of his actions to limit the secured claim of Philips, Curtin & DiGiacomo as escrow agent to $125,000.

4. The trustee has carried his burden in defense to a motion to abandon by demonstrating sufficient likelihood that he will succeed on the merits of an action object-

ing to the secured claim of a creditor which forecloses his equity.

5. Because there is a reasonable probability of success concerning the trustee's objections to claims, abandonment is not appropriate at this time. The debtors' motion will be denied without prejudice in order to allow refiling by the debtors if the proofs of claim are ultimately upheld.

### DISCUSSION

The parties differ first on the question of whether the R.J. Reynolds' judgment still constitutes a lien on the debtors' respective properties and, if so, in what amount. The debtors argue that the secured claim retained by the escrow agent remains in excess of $850,000. The respondents contend based on *Matter of Gladstone Glen,* 739 F.2d 1233 (7th Cir.1984) that the secured claim may be equitably limited to $125,000. The trustee has instituted an adversary proceeding against the escrow agent for that purpose.

Also significantly, the parties disagree on the general question of whether the postpetition creation of equity in property prior to abandonment accrues to the benefit of the estate. I turn my attention to this issue first, because if postpetition appreciation belongs to the debtors, the trustee cannot prevail even if he establishes that equity was, in fact, created.

### I.

■ There is no question that upon the debtors' bankruptcy filing an estate was created which included "all legal or equitable interests of the debtor in property as of the commencement of the case". 11 U.S.C. § 541(a)(1). The estate thus includes the debtors' residences until such time as they are liquidated or abandoned pursuant to 11 U.S.C. § 554. Under section 554, property may be abandoned be-

fore the case is closed at the instigation of the trustee, (§ 554(a)), or a party in interest, (§ 554(b)), or upon closing of the case if the property has not been "otherwise administered", (§ 554(c)). To the extent relevant here, section 554(c) establishes that scheduled property that is not liquidated or otherwise disposed of by the trustee is returned to the debtor when the case is closed.

11 U.S.C. § 541(a)(6) provides that property of the estate includes:

"[P]roceeds, product, offspring, rents or profits of or from property of the estate except such as are earnings from services performed by an individual debtor after the commencement of the case."

The fact that proceeds of property of the estate are included in the estate means that when property of the estate is sold, whatever consideration is received belongs to the estate subject to the debtor's potential exemption rights under 11 U.S.C. § 522.[3] Because sale does not generally, if ever, occur simultaneously with formation of a bankruptcy estate, § 541(a)(6) mandates that the estate receive the value of the property at the time of the sale. This value may include appreciation or be enhanced by other circumstances creating equity which occur postpetition.[4] *In re Clark,* 711 F.2d 21, 23 (3rd Cir.1983). *Accord e.g., In re Brusseau,* 57 B.R. 457 (Bankr.D.N.D.1985).

The debtors accurately point out that after abandonment to the debtor either on motion or by operation of law upon closing of a case, the debtors get the benefit of any appreciation or other creation of equity. *See In re Wornell,* 70 B.R. 153 (W.D. Mo.1986); *In re Sutton,* 10 B.R. 737 (Bankr.E.D.Va.1981). Here, however the debtors did not wait. Although they did not violate the bankruptcy code by responding to an offer of a judgment creditor by

---

3. I do not pass on whether the debtors retain a right to exempt a portion of the proceeds. *See* 11 U.S.C. § 522(a)(2). *See also, Matter of Wilson,* 694 F.2d 236, 238 (11th Cir.1982); *In re Rappaport,* 19 B.R. 971 (Bankr.E.D.Pa.1982); *In re Sutton,* 10 B.R. 737, 739 (Bankr.E.D.Va.1981).

4. There was no issue raised in this matter as to application of the exception included in section 541(a)(6) for "earnings from services performed by an individual debtor after the commencement of the case". *See In re Ryerson,* 739 F.2d 1423 (9th Cir.1984). Under the circumstances presented here, I assume the debtor concedes that the exception does not apply.

which they may have created equity post-petition,[5] until abandonment occurs the property and any equity in it belong to the estate. I see nothing inequitable about a different result being mandated depending on whether abandonment has or has not occurred.[6] The different results are entirely consistent with the principle of allowing a bankruptcy trustee an adequate opportunity to administer property of the estate to discover whether equity is available.[7] *See Stanolind Oil & Gas Co. v. Logan*, 92 F.2d 28 (5th Cir.1937) *cert. denied* 302 U.S. 763, 303 U.S. 636, 58 S.Ct. 409, 58 S.Ct. 522, 82 L.Ed. 592, 82 L.Ed. 1097 (1938); *In re Paolella*, 79 B.R. at 610. Had the trustee instigated a compromise with a secured creditor (an entirely appropriate action for a trustee), I do not believe that any party would seriously argue that the resulting equity would accrue to the debtor rather than to the estate.

## II.

 Having concluded that if equity has been created it belongs to the estate, I must determine whether the trustee and the objecting parties have carried their burden to establish that equity now exists. *In re Paolella*, 79 B.R. at 611. As stated above, on this point, the debtors argue that the R.J. Reynolds judgment lien remains extant and that it continues to operate in its face amount as a lien on their residences. The trustee, for his part, responds that he has filed complaints objecting to the secured claim of the entity now holding the judgment and that if those objections are resolved favorably to him, the lien will be limited to $125,000. According to the

trustee, this would create substantial equity.[8]

In another context, I have evaluated the evidentiary burden on a party who seeks to oppose a motion on the basis that favorable resolution of a related adversary proceeding will mandate denial of the motion:

A party attempting to use (a complaint pursuant to) section 548 as a defense to a motion for relief from stay must make a sufficient showing to convince the court that it is likely to prevail on the merits of an action pursuant to section 548. *See Dennison*, 50 B.R. [950] at 955 [Bankr.E.D.Pa.1985); *Davenport*, 34 B.R. [460] at 465 [Bankr.M.D.Fl.1983]. *Cf. In re Gellert*, 55 B.R. 970 (Bankr.D.N.H.1985) (continuing the automatic stay on the ground of an available defense to the claim requires a showing analogous to the showing necessary for a preliminary injunction including *inter alia* establishing "likelihood of success on the merits".) Although the party need not prove his case under section 548 to prevail on his defense to the motion for relief, he must come forward with sufficient evidence to allow the court to conclude that there is a reasonable probability that he will ultimately prevail in a fraudulent transfer action. *See Paolino* [72 B.R. 555 (Bankr.E.D.Pa.1987) ].

*In re The Moore & White Co., Inc.*, 83 B.R. 277, 283–284 (Bankr.E.D.Pa.1988). *See also In re Munoz*, 83 B.R. 334, 337–338 (Bankr.E.D.Pa.1988) (use of .11 U.S.C. § 506(d) as a defense to a motion for relief).

---

**5.** For the purposes of this motion I need not decide whether the prepetition offer to compromise made by R.J. Reynolds created a power of acceptance in the debtors which should have been disclosed by the debtors in listing the value of their residences as assets.

**6.** The debtors' position implicitly assumes that the trustee has the risk of any depreciation occuring during his administration of the property, but that the debtors get the benefit of any appreciation.

**7.** Of course, this does not mean that a trustee can resist abandonment solely on the ground

that there is a remote possibility of appreciation. Absent evidence that appreciation is reasonably likely, mere assertions by the trustee that property may appreciate would not rebut a debtor's prima facie case establishing grounds for abandonment.

**8.** An open issue not addressed by the parties is whether the secured claim can be marshaled, given the fact that it constitutes a separate lien as against the debtors' respective residences. *See generally,* Karasik, *The Doctrine of Marshaling Under the Bankruptcy Code*, 89 Comm.L.J. 102 (1984); Note, *Marshaling of Assets in Bankruptcy,* 5 Bankr.Dev.J. 309 (1987).

I conclude that the trustee has a similar burden here in asserting that his objection to the secured claim of the escrow agent will succeed, thus creating equity for unsecured claimants and precluding abandonment. The trustee must establish that he is reasonably likely to prevail on the merits of his adversary proceeding.

The trustee's adversary proceeding is premised on the equitable principles which were most recently set out by the Seventh Circuit Court of Appeals in *Matter of Gladstone Glen*, 739 F.2d 1233 (7th Cir.1984). In *Gladstone Glen*, a case under Chapter XII of the Act, the debtor was a partnership formed for the purpose of acquiring and managing an apartment complex. The apartment complex was encumbered by three mortgages. After bankruptcy was filed, the partners in the debtor formed a second partnership with a third party and purchased the second of the three security interests on the property at a significant discount. This new partnership attempted to assert the full value of the second mortgage so as to squeeze out the third mortgage holder's secured claim.

The Seventh Circuit noted that the third party partner's "capital contribution was minimal and, in fact, he was included in the deal only to ensure that the SMI mortgage did not merge into the fee held by Gladstone Glen." *Gladstone Glen* at 1235. Upon balancing the equities, the Court concluded that the second partnership's secured claim could be equitably limited to the value for which the security interest had been purchased so as to preclude the partners in the debtor from unfairly profiting at the expense of the third lienholder. *Accord e.g., In re the Van Sweringen Co.*, 119 F.2d 231 (6th Cir.1941).

The Seventh Circuit's conclusion is consistent with the longstanding equitable principal that:

> Where claims or interests have been assigned or purchased, allowance thereof may be controverted on the ground that as a result of fraud, misrepresentation, overreaching or violation of a fiduciary obligation, such claims or interests were acquired for an inadequate consideration, and where this can be shown the court may disallow the claim or interest or (more often) allow it only for the amount actually paid.

6 *Collier on Bankruptcy,* ¶ 9.04 at 1535–1536 (14th ed. 1978) (footnotes omitted).

In the case at bench, the issue of whether the purchaser's claim can be equitably limited under the principles enunciated in *Gladstone Glen* must ultimately be resolved in the trustee's adversary proceeding. However, the trustee and the other objectors have presented enough evidence here to establish a sufficient likelihood of success on the merits in that proceeding in order to defeat the debtors' abandonment requests. Not only did one of the purchasers state that she does not expect more than repayment with interest of the amount she contributed to purchase the judgment, but also the debtors themselves stated that given their relationship to the various purchasers, they ultimately expect to repay only the amount expended plus reasonable interest.

### III.

I therefore conclude that the evidence presented is sufficient to carry the trustee's burden that equity will ultimately be available to the estate. Consequently, abandonment will not presently be allowed. As I noted in my prior memorandum opinion in this matter, the purpose of 11 U.S.C. § 554(b), under which the debtors are proceeding, is to prevent a trustee from unnecessarily selling property without value to the estate merely in order to earn a commission. *In re Paolella*, 79 B.R. at 609 *citing In re K.C. Machine & Tool Co.*, 816 F.2d 238, 246 (6th Cir.1987). In the case at bench, I will not allow the trustee to sell the debtors' residences unless he is ultimately able to establish that there is equity in the property.

Consequently, the practice which Congress meant to remedy by enactment of section 554(b) and which the debtors apparently fear, is protected against here. I will deny the debtors' motions to abandon without prejudice so that they may refile if the

trustee's adversary proceedings are resolved in favor of the claimant.

Appropriate orders will be entered.